CREEM et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    December 30, 1910.)

1. INSURANCE (§ 151*)—INDEMNITY INSURANCE—CONTRACT—CONSTRUCTION.

A policy indemnifying a contractor to build the foundations for the pillars of an elevated railway against loss for injuries to employés, and an agreement attached to it, whereby the policy is extended to cover the liability of the contractor to the public for personal injuries caused by the contractor or his workmen, must be construed together as constituting one agreement to indemnify the contractor against loss for damages for accidental injuries to employés and injuries to the public caused by the contractor or his employés.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 308–311;  Dec. Dig. § 151.*]

2. INDEMNITY (§ 13*)—IMPLIED CONTRACTS—RIGHT OF ONE COMPELLED TO PAY TO INDEMNITY FROM PERSON PRIMARILY LIABLE.

The right to indemnity by one who has been held legally liable for damages which another ought to pay exists independently of statute.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35;  Dec. Dig. § 13.*]

3. INSURANCE (§ 435*)—INDEMNITY INSURANCE—CONTRACTS—CONSTRUCTION.

An insurer, agreeing to indemnify a subcontractor to build for a contractor the foundations for the pillars of an elevated railroad, which the contractor is to build for a railroad company, against loss from injuries to employés and to the public caused by the subcontractor or his employés, is liable for a loss sustained by the subcontractor against whom a judgment has been rendered to indemnify the contractor adjudged liable for injuries to a pedestrian falling over an obstruction in a street caused by the subcontractor in the performance of his work.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1144;  Dec. Dig. § 435.*]

4. INSURANCE (§ 616½*)—ACTION ON INDEMNITY POLICY—RES JUDICATA.

Where an insurer, agreeing to indemnify a subcontractor against loss for injuries to employés and to the public, allowed the recovery of a judgment in favor of a wife for injuries sustained by falling over an obstruction in a street caused by the subcontractor in the performance of his work without denying the responsibility of the subcontractor for the injuries, the liability of the insurer for loss from a judgment for the husband for his damages caused by the accident was res judicata.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 616½;*  Judgment, Cent. Dig. § 1224.]

5. INSURANCE (§ 514*)—INDEMNITY INSURANCE — CONTRACTS—CONSTRUCTION—"JUDGMENT."

A judgment against a contractor for injuries to a pedestrian falling over an obstruction in a street caused by a subcontractor in the performance of his contract is not a judgment against the subcontractor within a policy stipulating that insurer will indemnify the subcontractor against loss for injuries to employés and the public, since a loss is not sustained until liability has been established against the subcontractor by a judgment, and the fact of notice to defend the action against the contractor merely makes the judgment against him conclusive evidence as against the subcontractor as to the issues actually litigated.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1298;  Dec. Dig. § 514.*

For other definitions, see Words and Phrases, vol. 4, pp. 3827–3842;  vol. 8, pp. 7695, 7696.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. INSURANCE (§ 514*)—INDEMNITY INSURANCE—CONTRACTS—CONSTRUCTION.

An insurer agreed to indemnify a subcontractor against loss for injuries to employés and the public. A pedestrian was injured by falling over an obstruction in the street caused by the subcontractor in the performance of his work. A judgment for the damages was recovered against the contractor, who subsequently recovered judgment over against the subcontractor. *Held*, that the subcontractor's cause of action on the policy arose on the rendition of judgment against him, whether he had notice to defend the action against the contractor or not.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1298; Dec. Dig. § 514.*]

7. INSURANCE (§ 622*)—INDEMNITY INSURANCE—CONTRACTS—ACTIONS—LIMITATIONS.

The purpose of a stipulation, in a policy to indemnify a subcontractor against loss for injuries to his employés and the public, that no action shall lie against insurer after the expiration of the period within which an action for damages on account of injuries may be brought by a claimant against the subcontractor unless at the expiration of the period there is a suit arising out of such accident pending against insured, in which case the action may be brought within 30 days after rendition of final judgment, is to require an action to be brought within the time during which an action on account of an accident may be brought against the subcontractor or within 30 days after the rendition of judgment in such action, and no action may be brought on the policy after the expiration of three years from the happening of an accident unless a suit is then pending against the subcontractor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1544–1550; Dec. Dig. § 622.*]

8. APPEAL AND ERROR (§§ 1097, 1195*)—LAW OF THE CASE.

A decision of the Appellate Division rendered on appeal is the law of the case on a subsequent trial and appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4358, 4661; Dec. Dig. §§ 1097, 1195.*]

9. INSURANCE (§ 623*)—INDEMNITY POLICY—TIME TO SUE—WAIVER.

An insurer agreed to indemnify a subcontractor for loss for injuries to employés and the public. The policy required the giving of notice of claims for accidents and required insurer to defend actions therefor and subrogated it to all claims of the subcontractor against third persons. A pedestrian injured by an obstruction in a street coused by the subcontractor sued the contractor. Insurer assumed the defense thereof, and its counsel agreed to protect the subcontractor against any claim of the contractor for indemnity and promised to act as counsel for the subcontractor in defending the action. Counsel for insurer procured a dismissal of the action against the contractor on the ground that the subcontractor was an independent contractor; but the judgment was reversed on appeal after the expiration of three years from the date of the accident. The promise of the counsel of insurer to defend the subcontractor was made to obtain the co-operation of the subcontractor in the defense of the action. *Held*, that insurer waived the stipulation in the policy providing that no action should lie against it after the expiration of the period within which an action for damages for injuries might be brought by the claimant.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1551–1553; Dec. Dig. § 623.*]

10. INSURANCE (§ 623*)—INDEMNITY INSURANCE—ACTIONS—ESTOPPEL.

Without any notice to the subcontractor, insurer in such case gave a stipulation for judgment absolute and appealed. At the expiration of three years after the accident, there were suits pending against the subcontractor arising out of the accident; but the actions were discontinued by the written consent of the attorneys of the parties and on motion of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the attorney for insurer. The discontinuance was without notice to the subcontractor. *Held*, that insurer was estopped from relying on the stipulation in the policy that no action should lie against it after the expiration of the period within which an action for injuries might be brought.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1551–1553; Dec. Dig. § 623.*]

11. INSURANCE (§ 390*) — INDEMNITY INSURANCE — BREACH OF WARRANTY — WAIVER.

Where an indemnity insurer recognized the validity of its policy and by its conduct subjected insured to liability, it could not rely on a breach of insured's warranty.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1037, 1038; Dec. Dig. § 390.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Daniel J. Creem and another against the Fidelity & Casualty Company of New York. From a judgment for plaintiffs entered on the verdict of the jury and from an order denying a new trial, defendant appeals, and plaintiffs appeal from a part of the judgment and from an order denying motion for an extra allowance. Order denying extra allowance reversed, and judgment as thus modified affirmed.

See, also, 134 App. Div. 949, 118 N. Y. Supp. 1102.

Argued before INGRAHAM, P. J., and McLAUGHLIN, MILLER, LAUGHLIN, and DOWLING, JJ.

Herbert C. Smyth, for plaintiffs.

Charles C. Nadal, for defendant.

MILLER, J. This is the second appeal in this case from a judgment in favor of the plaintiffs. After our decision on the former appeal (132 App. Div. 241, 116 N. Y. Supp. 1042), the complaint was amended, and the record now presents the plaintiffs' claim of waiver, estoppel, and breach of contract. At the close of the evidence on the trial under review, the defendant moved to dismiss the complaint. The plaintiffs asked the court to submit certain specific questions to the jury and to reserve the direction of a general verdict until the finding of the special verdict. The court submitted a single question, hereinafter referred to, which was answered in the affirmative, whereupon the court directed a verdict for the plaintiffs for $7,139.91, comprising three items, viz:, $5,000 of the Bernard Johnston judgment; $898.33 expenses in defending the suit on that judgment; and $1,241.58 interest. Except for a request to charge on a specific point, hereinafter referred to, the defendant did not ask for the submission of any question to the jury. In effect, the case was submitted to the court by the parties, except with respect to a single question of fact upon which the verdict of the jury was taken for the information of the court.

The history of the different litigations, involved in this case, was quite fully stated by Mr. Justice McLaughlin on the former appeal,

and I shall state herein only such additional facts as may be necessary to elucidate the questions now presented.

The first question is whether the plaintiffs' loss is covered by the policy. By the terms of the policy the defendant agreed to indemnify the plaintiffs "against loss from liability for damages on account of bodily injuries fatal or otherwise, accidentally suffered to any employé or employés"; and by an agreement attached to it the policy was extended "to cover the liability of the assured to the public only for personal injuries, only caused by the assured or the assured's workmen." The fair import of these two clauses, construed together, as they must be, is an agreement to indemnify the plaintiffs against loss from liability for damages on account of accidental injuries to employés and injuries to the public, caused by the assured or their employés. The recoveries in the Johnston suits were upon the theory that Kate Johnston was injured by falling over an obstruction in the street, caused by the assured in the performance of a contract between them and the Phœnix Bridge Company (Johnston v. Phœnix Bridge Co., 44 App. Div. 581, 60 N. Y. Supp. 947; Id., 169 N. Y. 581, 62 N. E. 1096), wherefore the latter recovered in the suit on the Bernard Johnston judgment, on the principle that one who has been held legally liable for damages, which another ought to pay, is entitled to indemnity from the latter (Phœnix Bridge Co. v. Creem, 102 App. Div. 354, 92 N. Y. Supp. 855). The right to indemnity in such case exists independently of contract. O. S. N. Co. v. Co. T. E., 134 N. Y. 461, 31 N. E. 987, 30 Am. St. Rep. 685, and cases cited by Follett, C. J., particularly Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am. Rep. 324. By circuity of action, then, these plaintiffs have sustained a loss from liability to the public on account of personal injuries, caused by them or their workmen, and the case is as plainly within the terms of the policy as though the Johnston suits had been brought in the first instance against them. The appellant had notice of, and an opportunity to defend, each of the four suits. By its conduct of the defense of the Kate Johnston suit, judgment was allowed to be recovered without denying the responsibility of these plaintiffs for the accident. Thereby that question was res adjudicata in the husband's suit, and ultimate liability was imposed on these plaintiffs. Wherefore the appellant cannot now be heard to say that the accident was not caused by the assured, simply because in action No. 1, brought by the bridge company on the Kate Johnston judgment, these plaintiffs had the good fortune to escape proof of the notice to defend, and thus were allowed to prove that they were not responsible for the accident.

The case of Tolmie v. Fidelity & Casualty Co., 95 App. Div. 352, 88 N. Y. Supp. 717, affirmed 183 N. Y. 581, 76 N. E. 1110, is not in point. There, the plaintiff sought to recover the amount of a judgment, recovered against his firm by the city of New York, on a bond given to indemnify and save the city harmless from an action brought against it "whether groundless or otherwise," but did not prove what caused the accident out of which the cause of action against the city arose.

Much confusion of thought will be avoided by determining the precise time when this cause of action arose, and when the limitation period, provided in the policy, expired, points which were not decided upon the former appeal.

The defendant's agreement was to indemnify against loss from liability for damages. The assured, "upon the occurence of the accident, and also upon receiving information of a claim on account of the accident," was to give written notice thereof to the defendant. Then follow these provisions:

"(3) If thereafter any legal proceedings are taken against the assured to enforce a claim for damages on account of such accident, the company will defend the same at its own cost, in the name and on behalf of the assured.

"(4) The assured shall not, except at his own cost, settle any claim, nor incur any expense, nor interfere in any negotiation for settlement or in any legal proceedings, without the consent of the company previously given in writing. * * * "

The defendant then was to defend any legal proceedings taken against the assured, to enforce a claim for damages on account of an accident—not simply an accident covered by the policy, as is the provision of some policies of indemnity insurance. See Cornell v. Travelers' Ins. Co., 175 N. Y. 239, 67 N. E. 578. And the assured was not to settle any claim, or even interfere in any legal proceedings, without the written consent of the defendant. The defendant of course was at liberty on its own account to compromise a claim before final judgment. But the fair import of the contract is that the assured could not call upon the defendant to pay the stipulated amount of indemnity for a loss until that loss had actually been sustained as the result of the rendition of a judgment against the assured; and so the limitation clause provided that an action might be brought within 30 days after final judgment against the assured. If the defendant refused to defend an action, it may be that a cause of action for breach of the contract to defend would immediately arise, although the damages could not be determined until later. But such an action is very different from an action on the contract. The action on the policy arose on one of two dates, either on May 10, 1902, when the final judgment was rendered in the action of Bernard Johnston against the Phœnix Bridge Company, or on June 25, 1906, when the final judgment was rendered in the case of the Phœnix Bridge Company against these plaintiffs.

If the plaintiffs had not been notified to defend the Bernard Johnston suit, the rendition of judgment therein would have given them no cause of action on the policy; and it seems to me that the fact that notice was given cannot in and of itself determine the question, but that the policy must govern, and that the same rule will apply in either case. The defendant has contended throughout this litigation that the suits against the bridge company were not suits against the assured within the meaning of the policy, although the latter had notice to defend them; and it must be conceded that the judgments against the bridge company were in no sense judgments against the assured, who were not harmed by them until claims were asserted thereon. Liability and loss are not the same. The contract was to

indemnify against loss from liability. The loss was not sustained, within the meaning of the contract, until the liability was established by a judgment. The fact of notice to defend the Bernard Johnston suit merely had the effect of making the judgment in that suit conclusive evidence with respect to the issues actually litigated. Corning v. Spelman, 130 App. Div. 767, 115 N. Y. Supp. 366. If no notice had been given, the question, settled by the judgment, could have been established by independent evidence. As a matter of fact, the judgment in the Bernard Johnston suit was not conclusive even as to these plaintiffs' responsibility for the accident because that question was res adjudicata as between the parties to the suit; and the bridge company was apparently unable to prove that these plaintiffs had notice to defend the Kate Johnston suit, else they would have done so in action No. 1. While this point does not appear to have been raised in action No. 2, this defendant cannot complain because it had notice to defend. Moreover, it was at least a fair question whether the bridge company had the right to indemnity in view of the fact that it had been held liable for its own negligence, and these plaintiffs were certainly justified in litigating that question. Their success in the defense of action No. 1 certainly justified their course in defending both actions. No doubt, the refusal of the defendant to defend the suits, brought by the bridge company, was a breach of contract, and the plaintiffs may then have had a cause of action for such breach. Possibly, that may have given them the right to pay the judgments without suit, and thereupon to bring an action on the policy for the stipulated indemnity, in which actions they would have had to establish their liability. But they were not obliged to take that chance, and could wait until there was an adjudication of liability. Their cause of action, then, on the policy to recover the stipulated indemnity, arose on June 25, 1906.

When was the action barred by the terms of the policy? The limitation clause is as follows:

"(12) No action shall lie against the company after the expiration of the period within which an action for damages on account of the given injuries or death might be brought by such claimant or his representatives against the assured, unless at the expiration of said period there is a suit arising out of such accident, pending against the assured, in which case an action may be brought in respect to the claim involved in such action against the company by the assured within thirty days after final judgment is rendered in such suit, and not later."

Obviously, the purpose of that provision was to require an action to be brought within the time during which an action on account of the accident might be brought against the assured, or within 30 days from the final judgment in such an action. If the case were one of first impression, I should say that, applying the rule of construction applicable to such a contract (see Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292), the letter of the clause would have to yield to its spirit and purpose, and that it would not be permissible to adopt a construction which would bar an action before it arose. See Mayor v. Hamilton Fire Ins. Co., 39 N. Y. 45, 100 Am. Dec. 400; Hay v. Star Fire Ins. Co., 77 N. Y. 235, 33 Am. Rep. 607; Steen v. Ni-

agara Fire Ins. Co., 89 N. Y. 316, 42 Am. Rep. 297; Barnum v. Merchants' Fire Ins. Co., 97 N. Y. 195. Very likely, the draftsman of that clause did not think of the contingency which has arisen in this case; and it may be that the case is not covered by it, in which event, the statute would apply. It seems to me, however, that it is quite possible to construe that clause so as to fit this case. The words "suit" and "action" might be construed with reference to the words "legal proceedings" in clauses 3 and 4, and the actions of Bernard Johnston against the bridge company and of the latter against these plaintiffs might be deemed continuous, legal proceedings, taken against the assured to enforce a claim for damages on account of the accident. While, very likely, the draftsman had in mind the person injured when he used the words "such claimant or his representatives," I find no antecedent of "such claimant." In the prior provisions, the expressions "claim on account of an accident," "claim for damages on account of such accident," "any claim," are found. The Phœnix Bridge Company was a claimant for damages, and it founded that claim upon the assured's responsibility for the accident. Its action against the assured was timely brought, and this action was brought eight days after final judgment therein. I am not undertaking to review our former decision, for we are undoubtedly concluded by it upon the proposition that the limitation period, specified in the policy, had expired before the action was brought. But it seems to me that those observations are pertinent upon the questions of waiver and estoppel; for it ought to require but slight recognition by the defendant of its obligation under the policy to amount to a waiver of such a limitation clause, as we have construed it.

For the purpose of this appeal, it must be deemed settled that no action could be brought on the policy after the expiration of three years from the happening of an accident unless a suit was then pending against the assured. The only suits pending against the assured on the 6th of June, 1899, were the two suits brought by Kate and Bernard Johnston, which never resulted in judgments, but were discontinued; and, for the present, I shall eliminate them. It is immaterial that the plaintiffs had notice to defend the suits against the bridge company, for, as has already been observed with respect to the time when the plaintiffs' cause of action arose, the rule of limitation must be the same whether notice to defend those suits was given or not. Upon the construction of the contract, which this court has adopted, those suits were not pending against the assured.

Either the spirit of the instrument is to govern, if it covers this case, in which event the action was timely brought within 30 days after June 25, 1906, or the letter is to control and the action was barred June 6, 1899. It seems to me that there is no middle course, and, if it were possible to find one, we should not seek it to help the defendant escape a just obligation. If the defendant will invoke the letter of its own contract, let it have the cold literal words. Indeed, the defendant contends that the action was barred June 6, 1899, and we now adopt its construction.

This defendant assumed the defense of the Johnston suits against

the bridge company, pursuant to a policy of indemnity insurance which it had issued to the defendant therein. On March 24, 1899, its counsel wrote one of the plaintiffs under the defendant's letter head, but nominally on behalf of the bridge company, notifying him of the Kate Johnston suit, and that the bridge company would look to him for indemnity. Clause 13 of the defendant's policy provides:

"(13) In case of loss under this policy, the company shall be subrogated to all claims or rights of the assured in respect to such loss against any third party or parties, and the assured shall execute any and all papers required to secure to the company said rights."

There is a dispute as to what occurred after the giving of that notice. The jury have accepted the plaintiff Creem's version of the transaction, and we do not feel justified in interfering with their verdict. Said plaintiff then, upon receipt of said notice, took the policy to the defendant's counsel and was told that it would protect the plaintiffs against any claim of the bridge company for indemnity. Said counsel showed to said plaintiff the summonses and complaints in both of the Johnston suits, and requested him to assist in the defense of those actions, and, in response to his question as to whether he needed a lawyer, promised to act as his lawyer and to protect him to the full amount of his policy at any time. That promise and counsel's authority to make it on behalf of the defendant must be considered with reference to the defendant's obligations under the contract, the existing situation, and the purpose which counsel desired to accomplish. While it is said that the counsel had authority to represent the defendant only in the particular matters intrusted to him, this matter had been intrusted to him, and his promise was in the line of his duty and in fulfillment of the defendant's obligation under the policy. Moreover, there are other circumstances, bearing upon the question of the counsel's authority, which it is unnecessary to consider because the question was at least one of fact, and, by not asking to have it submitted to the jury, the defendant consented that it be passed on by the court.

The promise referred to two possible claims, which might be made against these plaintiffs, one by the bridge company for indemnity, the other by the Johnstons in case they were defeated in the pending suits. Both contingencies were referred to in the conversation. Counsel desired to defend the pending suits on the ground that the negligence, causing the injury, was that of these plaintiffs, independent contractors, and it was certain that, if that defense prevailed upon the trial, but should fail on appeal, as happened, final judgment would not be obtained against the bridge company within the three-year period, which then lacked only two months of expiration. The promise, therefore, necessarily involved an agreement to waive the limitation clause; and it was supported by sufficient consideration because it was made to obtain the co-operation of these plaintiffs in the defense which counsel desired to make and to induce them not to employ other counsel, who might have insisted upon a different defense.

However, we do not need to rest the decision on the ground of an agreement to waive the limitation clause, supported by a sufficient con-

sideration, because a case of technical waiver, as well as estoppel, is established, not by reason of the promise alone, because no forfeiture had then occurred, but by reason of the promise, together with the subsequent conduct. When the plaintiffs were given notice of the pending suits, they had the right to assume the defense of them, if they were to be bound by the judgments. If they had then been well advised, they would not have hazarded their rights on a judgment of dismissal granted on the ground that their negligence had caused the accident; but, in view of the short time remaining in which to bring an action on the policy, they would have insisted on a defense on the merits, which would have resulted either in a judgment virtually ending both litigations, or in one against the bridge company on April 7, 1899, and in time to enable them to preserve their rights under the limitation clause of the policy. While the defendant had the right under the policy to insist upon noninterference by the plaintiffs and was obliged to defend in their behalf, it could not exercise that right or discharge that duty so as to prolong the litigation until the plaintiffs' rights were forfeited. By giving the plaintiffs notice of the suits, and by then procuring them not to interfere, the defendant assumed the defense on their behalf pursuant to the provisions of the policy, and the promise to protect them, which was but a renewal of its obligations under the policy, and it could not continue in that relation a moment beyond the three-year period, without recognizing its continued obligation under the policy. When it ceased to represent the plaintiffs, it was bound to turn the defense over to them, and its failure to do that amounted to a technical waiver of the limitation clause. Draper v. Oswego Fire Ass'n, 190 N. Y. 12, 82 N. E. 755; Kiernan v. Dutchess Co. Ins. Ass'n, 150 N. Y. 190, 44 N. E. 698; Walker v. Phœnix Ins. Co., 156 N. Y. 628, 51 N. E. 392; Hartford Life & Annuity Ins. Co. v. Unsell, 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496. Waiver, once established, cannot be recalled. Dobson v. Hartford Ins. Co., 86 App. Div. 115, 83 N. Y. Supp. 456; Id., 179 N. Y. 557, 71 N. E. 1130.

Moreover, it amounted to an estoppel. The judgment of dismissal in the Kate Johnston suit was reversed after the three-year period had expired; and, without any notice to the plaintiffs, the defendant gave a stipulation for judgment absolute, and appealed to the Court of Appeals. No competent lawyer would have allowed the plaintiffs to take that chance, if their rights under the policy were forfeited. The result was that the plaintiffs were subjected to liability without ever having a day in court on the merits. Unless the defendant recognized its obligation under the policy, its duty was to turn the case over to these plaintiffs, who then had the right to decide whether such a step should be taken, and, by going ahead without a word to the plaintiffs, the defendant estopped itself to deny its obligation under the policy.

The pendency of the Johnston suits against these plaintiffs on June 6, 1899, presents another aspect of the case. The defendant's counsel appeared for these plaintiffs in those suits. When the suits were brought by the bridge company on June 4, 1902, plaintiff Creem took the summonses and complaints to said counsel, who refused to defend, whereupon written notice was given to the defendant that it would

be held responsible for any judgments obtained therein. On July 1, 1902, orders of discontinuance in said two Johnston suits were entered. Those orders were obtained upon the written consent of the attorneys for the respective parties and on the motion of the attorneys for this defendant, nominally acting on behalf of these plaintiffs.

It thus appears that, at the expiration of the three years after the accident, there were suits "arising out of such accident, pending against the assured." This action is brought "in respect to the claim involved in such actions," i. e., the liability of these plaintiffs for damages on account of personal injuries sustained by Kate Johnston, which was in fact the claim involved in every one of the suits hereinbefore referred to. Therefore, but for the discontinuance of those suits, this suit would have been brought in time within the strict letter of the limitation clause, if not within its spirit. And the defendant cannot insist upon the letter of one sentence and the spirit of the next.

While the plaintiffs in those suits had the right to discontinue them, these plaintiffs had a right to notice of such discontinuance and would have had it but for the fact that they had intrusted their rights to the defendant, pursuant to its promise of protection. As a matter of fact, the suits were discontinued on the motion of the defendant's counsel, who assumed to act on behalf of these plaintiffs. Thus, as late as July 1, 1902, the defendant assumed to act on behalf of these plaintiffs, as it had no right to act except perforce of the policy and of its promise. That action, therefore, was a distinct recognition by the defendant of its liability under the policy and was a technical waiver of any forfeiture, and that was more than 30 days after final judgment in the Bernard Johnston action against the bridge company.

Moreover, the purpose of the defendant in procuring those orders of discontinuance is apparent, and it requires no argument to show that, while pretending to act for the plaintiffs, the defendant could not secretly cause their rights under the policy to be barred, nor could it conceal the fact that an event had occurred which would set the short limitation period running. Such conduct should estop it to deny that those suits are still pending.

With respect to the defendant's claim of breach of warranty, upon which it requested the court to charge the jury, it is sufficient to say that, even if well founded, it is now too late for the defendant to assert it, in view of what it has done in recognition of the policy, and of the fact that, by its conduct, the plaintiffs have been subjected to liability.

The plaintiffs ask us to modify the judgment by increasing the amount so as to include the expenses incurred by them in the successful defense of action No. 1, brought by the bridge company. Our power to do that is, to say the least, doubtful, even if we were not concluded on the point by our former decision. It seems to us, however, that the case was both difficult and extraordinary, and that the motion for an extra allowance should have been granted.

The order denying the motion for an extra allowance is reversed, and the motion granted, allowing the plaintiffs 5 per cent. of the recovery as an additional allowance, on the ground that the action is

difficult and extraordinary; and the judgment as thus modified and the order denying motion for a new trial are affirmed, with costs.

LAUGHLIN and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). When this case was before this court on the former appeal (132 App. Div. 241, 116 N. Y. Supp. 1042), it was expressly held that the action was not commenced within the time provided in the policy, and I do not see that any additional facts have been presented upon this trial which question the conclusion there arrived at.

The accident which was the basis of this litigation occurred on June 6, 1896, and an action to recover for that accident was barred by the statute of limitations three years thereafter. · Subdivision 5, § 383, Code Civ. Proc. By the terms of the policy, no action would lie against the defendant after June 6, 1899, unless at that time there was a suit arising out of such accident pending against the plaintiffs, in which case an action can be brought against the defendant within 30 days after final judgment was rendered in such action and not later. On June 6, 1899, there were actions pending against the plaintiffs on account of the accident, and the time within which this action could be brought was thus extended until 30 days after a final judgment was rendered in such actions and not later. These actions, however, were not prosecuted to judgment, but on June 24, and July 1, 1902, orders discontinuing such actions were entered by consent, and by these orders the actions were finally terminated. Thereafter no judgment could be entered in these actions or either of them, and plaintiffs were relieved from direct liability on account of the accident. The plain intent of this exception was to give to the plaintiffs the right to commence an action against the defendant to recover for any liability which was incurred in consequence of a judgment in an action pending at the time that the statute would run against the insured. Upon the discontinuance of the actions brought by the person injured, there could be no recovery by such person against the plaintiffs. The attorney for the defendant had assumed to defend those actions against the plaintiffs by the person injured, and after the person injured had obtained the judgment against the Phœnix Bridge Company the satisfaction of that judgment would have relieved the plaintiffs from any liability; and, as the time within which an action by the person injured against the plaintiffs could have been commenced had expired, no such action could have been subsequently instituted. It seems that the Phœnix Bridge Company also had a policy of insurance with the defendant, and the same attorneys who represented the plaintiffs in the action by the person injured also represented the Phœnix Bridge Company in the litigation between the person injured and that corporation which arose out of the accident, and the defendant, recognizing its obligation under its policy with the plaintiffs, had assumed to defend them in the action brought by the person injured and her husband against the plaintiffs.

It seems to me, therefore, that the defendant was only performing. its obligation when it procured the action against these plaintiffs to

be discontinued and thus relieve these plaintiffs from any liability to the person injured arising out of the accident upon which that cause of action was based. It is quite true that up to the time of the discontinuance of the action the defendant was defending the plaintiffs in the attempt that had been made to charge them with responsibility for this accident. The plaintiffs had no concern with that defense, as the defendant was bound to indemnify them for any loss that they sustained in consequence of the accident. That defense had been assumed by the defendant and successfully accomplished, and plaintiffs were relieved from liability to the person injured. Prior to April, 1902, the attorneys for the defendant the Phœnix Bridge Company paid the amount for which they were liable to the Phœnix Bridge Company; these attorneys withdrew from the defense of the action, and Messrs. Robinson, Biddle & Ward were substituted for the Phœnix Bridge Company. The substituted attorneys wrote to plaintiffs notifying them of the pendency of the action of Bernard Johnston v. Phœnix Bridge Company, and that plaintiffs must come in and defend that action. A day or two after plaintiffs received this notice, they called with it upon Mr. Nadal, the attorney for the defendant who had assumed plaintiffs' defense of the actions brought by the Johnstons against the plaintiffs, and delivered that notice to Mr. Nadal. Mr. Nadal told plaintiffs that the case had got so snarled up that there was nothing for him to do but to stand by and let it unsnarl itself. Plaintiffs then asked Mr. Nadal to defend that action, which he evidently refused to do. Here was distinct notice to the plaintiffs that Bernard Johnston had sued the Phœnix Bridge Company for damages sustained by the accident; that plaintiffs were required to assume the defense of the action.

The action by Bernard Johnston against the plaintiffs had not then been discontinued, and I think that, because of the relations existing between the plaintiffs and the Phœnix Bridge Company, the action pending against the Phœnix Bridge Company was, when this notice was received, an action pending against the plaintiffs within the meaning of this policy. As the plaintiffs were liable to the Phœnix Bridge Company for any recovery in that action, the refusal of the defendant to interpose for the defense of the plaintiffs in that action was undoubtedly a breach of its contract. But the plaintiffs then had notice that a suit was pending for which they would become liable for any judgment that was obtained against the Phœnix Bridge Company; that the defendant was no longer defending the Phœnix Bridge Company; and that defendant had repudiated its obligation to defend the plaintiffs in that action. The plaintiffs, however, abandoned any attempt to defend that action, and it resulted in a judgment against the Phœnix Bridge Company which was in effect a judgment against the plaintiffs. That judgment was entered May 10, 1902, and under the terms of this policy as I read it the plaintiffs had 30 days after the entry of that judgment to bring this action. The fact that the plaintiffs had neglected the defense of that action and had no notice of the date when that judgment was entered is entirely immaterial. It was the duty of the defendant to have defended it, and they must.

be charged with notice of the terms of their policy. It was because of their obligation to the Phœnix Bridge Company and the notice that had been given them of the pendency of the action that they became the substantial defendants therein, and they must be charged with notice of the time of entry of that judgment and of the fact that the time within which to sue the defendant for any liability that was imposed upon it by that judgment expired 30 days after it was entered. Thus on June 9, 1902, the time within which the plaintiffs could maintain an action against the defendant to recover for any liability based upon the Bernard Johnston judgment expired.

As before stated, the actions of Bernard and Kate Johnston against these plaintiffs were at that time still pending; but on the 22d of June or the 1st of July, 1902, these actions were discontinued, and there could be no further liability against the plaintiffs on account of those actions. Subsequently and on June 3, 1902, the Phœnix Bridge Company brought this action against the plaintiffs to recover the judgment obtained by Bernard Johnston against the Phœnix Bridge Company, and the complaint in that action alleged the contract made between the plaintiffs and the Phœnix Bridge Company; that one Kate Johnston had been injured in consequence of the negligence of the defendant in the prosecution of the work under that contract; that Bernard Johnston, the husband of the said Kate Johnston, had brought an action in the Supreme Court against the Phœnix Bridge Company to recover for the damages that he sustained in consequence of the injury of Kate Johnston; that the Phœnix Bridge Company had given timely notice to the defendant of the trial of the said action and invited them to be present and to take part therein; and that the plaintiffs were liable to the Phœnix Bridge Company to repay the amount of that judgment to the Phœnix Bridge Company. At that time the time within which the plaintiffs could have sued the defendant had not expired, and plaintiffs had full knowledge of all of the facts which would justify them in commencing an action against the defendant to recover the amount of that judgment. No such action was commenced. The plaintiffs, however, took this summons and complaint to the attorney for the defendant on June 9, 1902, and demanded that defendant defend that action. This request the defendant refused, and on the same day their attorney wrote the plaintiffs stating that the summons and complaint were returned to the plaintiffs as the defendant declined to take any action in reference to the matter. The position of the defendant, therefore, was then definitely defined, and I think an action brought by the plaintiffs against the defendant on that day to recover the amount of that judgment would have been within the time allowed by the policy. No such action was brought, however, until after the action of the Phœnix Bridge Company against the plaintiffs had been determined and the judgment had been not only affirmed by the Appellate Division but by the Court of Appeals. The judgment in the action of the Phœnix Bridge Company against the plaintiffs was entered on January 25, 1904, affirmed by the Appellate Division on March 31, 1905; final judgment on the remittitur from the Court of Appeals was entered June 25, 1906; and this action was commenced July 3, 1906.

I think the plaintiffs were barred from commencing this action on June 9, 1908, but by no possible construction of this policy could that time be extended for more than 30 days from the date of the entry of judgment in the case of the Phœnix Bridge Company against the plaintiffs entered January 25, 1904, which would be February 24, 1904. There was no question of estoppel, for before the time had actually expired the defendant expressly repudiated its obligations to defend either the Bernard Johnston action against the Phœnix Bridge Company or the action brought by the Phœnix Bridge Company against these plaintiffs. Plaintiffs then knew that the defendant had repudiated its obligation, and they must look out for themselves, and the defendant was entitled to the benefit of the provisions of the policy which limited the time within which an action could be commenced against it under the policy.

I think, therefore, that upon the former appeal in this action in 132 App. Div. 241, 116 N. Y. Supp. 1042, and upon the facts as they appear upon this trial, the defendant was entitled to a dismissal of the complaint, and the judgment in favor of the plaintiffs should therefore be reversed.

McLAUGHLIN, J. (dissenting). I dissent for the reasons stated by me in Creem v. Fidelity & Casualty Co., 132 App. Div. 241, 116 N. Y. Supp. 1042, and also on the authority of Tolmie v. Fidelity & Casualty Co., 95 App. Div. 352, 88 N. Y. Supp. 717, affirmed 183 N. Y. 581, 76 N. E. 1110.