## UNITED STATES FIDELITY & GUARANTY CO.
### v.
### VIRGINIA ENGINEERING CO., Inc.
### No. 6750.

United States Court of Appeals,
Fourth Circuit.

Argued April 14, 1954.

Decided May 25, 1954.

---

W. F. Hazen, Richmond, Va., and William E. Allaun, Jr., Newport News, Va. (Blake, Taylor and Hazen, Richmond, Va., and Newman, Allaun & Downing, Newport News, Va., on the brief), for appellant.

E. Sclater Montague, Hampton, Va. (Montague, Ferguson, Holt & Cumming, Hampton, Va., and Canada, Russell, Turner & Alexander, Memphis, Tenn., on the brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HAYES, District Judge. · · ·

PARKER, Chief Judge.

This is an appeal from a judgment for plaintiff on a policy of liability insurance. The plaintiff is the Virginia Engineering Company which had been engaged in constructing under contract a manufacturing plant for the International Harvester Company near Memphis, Tennessee. The defendant is the United States Fidelity & Guaranty Company, which had issued a policy of general liability insurance to the Engineering Company in which it agreed to pay on behalf of that company all sums that the latter might become obligated to pay by reason of liability imposed upon it by law on account of death or personal injury due to accident. The action was brought by the Engineering Company to recover from the Guaranty Company the sum of $43,966.53 with interest, being the amount of a judgment for personal injuries recovered by one Sartin against the Engineering Company and the Harvester Company, paid by the latter company under threat of execution, and deducted by it from moneys due the Engineering Company under the construction contract, which provided that the Engineering Company should indemnify and save the Harvester Company harmless from all claims of this character. The Guaranty Company defended on the ground that the payment of the judgment by the Harvester Company extinguished all liability thereunder and that the reimbursement exacted of the Engineering Company was in discharge of a liability assumed by contract and not covered by the Guaranty Company's policy. The case was heard by the judge without a jury; and, from judgment in favor of the Engineering Company, the Guaranty Company has appealed.

The facts out of which the claim of Sartin arose are that he was not an employee of the Engineering Company, but of a building contractor engaged in constructing houses on the premises of the Harvester Company. He was injured by coming in contact with a high voltage electrical current carried by wires maintained by the Engineering Company, which had negligently failed to provide proper safeguards against the danger thus presented. He sued both the Engineering Company and the Harvester Company and recovery was had against both. Recovery against the Harvester Company was sustained on the theory that it rested under the nondelegable duty to Sartin as an invitee on its premises, of seeing that proper preventive measures were taken to guard against the danger of the high voltage current, even though this and the wires that carried it were under the control of the Engineering Company, an independent contractor. See International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W. 2d 854, 864–868.

The provision of the policy upon which plaintiff relies obligates the company:

"* * * To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon

him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and caused by accident."

Among the exclusion clauses of the policy is the following:

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement not defined herein;

"(3) Definitions (a) Contract. The word 'contract' shall mean a warranty of goods or products or, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement."

The Guaranty Company contends that the liability of the Engineering Company which is the basis of the action here is an assumed liability within the meaning of the foregoing exclusion clause because of the indemnity provision of the contract between the Engineering Company and the Harvester Company, which is as follows:

"1. The Contractor agrees to protect, indemnify and save harmless the International Harvester Company, its servants, agents and employees, from and against any and all claims, demands, damages, suits, losses, costs, attorney fees, liability, awards, judgments and expenses of whatsoever nature for damage to property or for injury, including death, to any person or persons, including the servants, agents and employees of the parties hereto, resulting from or in any way growing out of the acts or omissions of the Contractor, the Contractor's agents, servants, or employees, or of any sub-contractor or sub-contractor's agents, servants, or employees."

"2. The Contractor shall provide, during the progress of his work, every and all safeguards and protection against accidents, injury and damage to persons and property, and shall be solely responsible for all loss, damage or injury to any work, materials, or property, and any injury or death to any person whomsoever, whether workman or otherwise, where such loss, damage, injury or death occurs on or about said structure or premises or elsewhere in connection with or as a result of the construction of the work, * * * "

After the Tennessee courts had affirmed the judgment in favor of Sartin against the Engineering Company and the Harvester Company, the Guaranty Company offered to pay one-half of the judgment if the Harvester Company would pay the other half, but this the Harvester Company refused to do. Counsel for Sartin then threatened to issue execution against the Harvester Company; and, to prevent this, that company, having theretofore withheld from payments due the Engineering Company under the construction contract a sufficient amount to pay this and certain other judgments, paid this judgment and charged the amount thereof against the payment so withheld. The right of the Harvester Company to do this was sustained in a suit instituted by the Engineering Company to recover the balance due under the contract. In that suit the right of setoff was asserted under the indemnity provision of the contract as well as because primary responsibility for the injury rested with the Engineering Company. The court found with the Harvester Company on the first of these grounds and did not find it necessary to consider the second ground.

We agree with the District Judge that the liability of the Engineering Company for the injuries sustained by Sartin was one imposed by law within the coverage clause of the policy and not merely one assumed under contract with-

in the meaning of the exclusion clause. The Engineering Company was entering into a construction contract in which liabilities of this sort might be incurred as a result of negligence on the part of its agents and servants; and the purpose of the insurance policy was to protect against liability arising from such negligence. The indemnity clause in the construction contract did not assume liability with respect to any claim for which the Engineering Company would not itself be liable at law, but merely undertook to protect the Harvester Company against liability for which the Engineering Company was responsible. To construe the exclusion clause to relieve the Guaranty Company of liability for such claims would be to write into the policy a restriction which it does not contain and which, we think, could not have been within the contemplation of the parties. It is not reasonable to suppose that, when the insured was taking insurance to protect against liability imposed by law, it was intended to exclude coverage of claims for which the law imposed liability on the insured, merely because insured had agreed to protect another against secondary liability on account of such claims.

■ The Guaranty Company properly admits that it would be liable under its policy if Sartin had obtained and enforced judgment against the Engineering Company alone or, having obtained judgment against both the Engineering Company and the Harvester Company, had by legal process collected it from the Engineering Company; but the fact that judgment was obtained against the Harvester Company in addition to the Engineering Company can make no difference, for the primary liability established by the judgment was that of the Engineering Company and there can be no question but that, upon payment of the judgment, the Harvester Company, being only secondarily liable, had the right to recover against the Engineering Company for any amount paid thereunder. The liability of the Engineering Company established by the judgment was not extinguished, therefore, by the payment made by the Harvester Company but the right to enforce it was transferred to the Harvester Company. Cohen v. Noel, 165 Tenn. 600, 56 S.W.2d 744; Black Mountain R. Co. v. Ocean Accident & Guarantee Corp., 175 N.C. 566, 96 S.E. 25; United States v. Savage Truck Line, 4 Cir., 209 F.2d 442, 446-447; 27 Am.Jur. p. 467; note 38 A.L.R. 566 et seq. As the Engineering Company remained liable for the amount of the judgment, it can make no difference with respect to the coverage of the policy that the liability was payable by the Engineering Company to the Harvester Company rather than to Sartin.

■■ We are not impressed by the argument that the Engineering Company was discharged of liability because the judgment was paid by a joint tort feasor. We recognize the rule that payment of a tort judgment discharges the liability of a joint tort feasor and that, in the absence of statute permitting it, no contribution between joint tort feasors is allowed. That rule, however, has no application to a case involving primary and secondary liability, such as we have here, where the payment of the judgment by the party secondarily liable confers upon such party the right to reimbursement from the party primarily liable. The position of the Guaranty Company comes to this: that it is absolved of its obligation to pay the liability imposed by law upon the Engineering Company because that liability, although it has in fact been paid by the Engineering Company, has been enforced through collection from another whom the Engineering Company was bound at law to reimburse. We know of no principle of law which would sustain this position. Liability under the policy depends upon the nature of the liability of the insured, not upon the manner in which the claim for liability has been enforced.

Almost "on all fours" with the case before us is the case of Board of Trade Livery Co. v. Georgia Casualty Co., 160 Minn. 490, 200 N.W. 633, 635-636. In

that case insured was taking passengers on tours for a navigation company. The navigation company had recovered from insured the damages which it had paid a passenger for injuries sustained in one of the cars of insured; and insured thereupon brought action against the company to recover the amount of such damages. In holding that insured might recover under the policy, the court said:

"Going now to the controlling question in the case, it must be resolved against defendant for the simple reason that what it insured plaintiff against was not, in the last analysis, judgments for damages or claims of any kind, but 'loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered.' *Liability depends, therefore, not on the manner in which claims are enforced,* as being indirect rather than direct, *but upon the agency of causation, i. e. claims* 'for damage on account of bodily injuries.' The amount required to reimburse the Northern Navigation Company for the Thurston judgments is so clearly a loss of the kind insured against that it ought not to require argument to demonstrate that it is within the policy coverage. * * * In reimbursing the Navigation Company for its outlay on account of the Thurston judgments, *plaintiff was making good its own liability and its own wrong, and not a primary liability or wrong of the Navigation Company,* a conclusion the correctness of which is not altered by the circumstance that the Thurstons in the first instance were able to collect from the Navigation Company. Notwithstanding that fact, the initial wrong, giving rise to the cause of action and the resulting 'loss,' was the act of the plaintiff, and the resulting liability was its liability and one of those, loss from which was clearly insured against by defendant." (Italics supplied.)

In point also is the decision in Harnden v. Southern Surety Co., 200 Mo.App. 162, 204 S.W. 34, 35–36, in which a lessee who had agreed to indemnify the lessor against liability for accidents to workmen had procured legal liability insurance such as is here involved. The lessor paid a judgment for damages using funds of the lessee then in its hands for that purpose. In holding that the lessee could recover under the insurance policy for the loss thus sustained, the court said:

"It is not material, therefore, in the present case whether these plaintiffs voluntarily or involuntarily allowed the American company to use the funds of the plaintiffs then in the American company's hands in settling these damage suits, provided it be conceded that there was liability against either of these plaintiffs or the American company in the damage cases, and that the amount paid was reasonable * *. The entire loss fell on plaintiffs, and defendant is obligated to indemnify plaintiffs for the loss paid by plaintiffs to discharge same whether paid directly by these plaintiffs to the plaintiffs in the damage suits or indirectly to and through its codefendant the American company. *The loss to plaintiffs was just as real and acute as if they had paid same directly to plaintiffs in the damage suits.*" (Italics supplied.)

In Creem v. Fidelity & Casualty Co. 141 App.Div. 493, 126 N.Y.S. 555, 558, which involved the right of one secondarily liable on a judgment to recover, after paying it, from one primarily liable for the tort involved, the Appellate Division of the New York Supreme Court said:

"The recoveries in the Johnston suits were upon the theory that Kate Johnston was injured by falling over an obstruction in the street, caused by the assured in the performance of a contract between them and the Phoenix Bridge Company (Johnston v. Phoenix Bridge

Co., 44 App.Div. 581, 60 N.Y.S. 947; Id., 169 N.Y. 581, 62 N.E. 1096), wherefore the latter recovered in the suit on the Bernard Johnston judgment, on the principle that one who has been held legally liable for damages, which another ought to pay, is entitled to indemnity from the latter (Phoenix Bridge Co. v. Creem, 102 App.Div. 354, 92 N.Y.S. 855). The right to indemnity in such case exists independently of contract. O[ceanic] S[team] N[av.] Co. v. Co[mpania] T[ransatlantic] E[spanola], 134 N.Y. 461, 31 N.E. 987, 30 Am.St.Rep. 685, and cases cited by Follett, C. J., particularly Gray v. Boston Gaslight Co., 114 Mass. 149, 19 Am.Rep. 324. By circuity of action, then, these plaintiffs have sustained a loss from liability to the public on account of personal injuries, caused by them or their workmen, and the case is as plainly within the terms of the policy as though the Johnston suits had been brought in the first instance against them."

In Black Mountain R. Co. v. Ocean Accident & Guarantee Corp., supra, 175 N.C. 566, 96 S.E. 25, there had been a recovery against a railroad company on account of an accident for which a firm of contractors was primarily liable. In holding that a partner of the contracting firm who paid the judgment to the railroad company could recover on a policy of liability insurance for the amount so paid, the court, speaking through Chief Justice Clark, answered the argument which is made here that the insurance company did not agree to be responsible on the indemnity contract made by the contracting firm with the railroad, saying:

"This ignores the fact that the railroad company was held liable solely because of the negligence, as found by the jury, of the subcontractors, and that, irrespective of any contract between Ruffin and the railroad company and of any claim for subrogation, that the railroad company, having paid for the damages caused by the negligence of the subcontractors, Ruffin, having reimbursed the railroad company, had a right to recover such amount upon the policy issued by the defendant to Ruffin & Harris, * * *"."

The rule here applicable was well stated in Couch, Cyclopedia of Insurance Law, vol. 5, sec. 1165(b) pp. 4136–4137, quoted with approval in St. Paul & Kansas City S.L.R. Co. v. U. S. Fidelity & Guaranty Co., 231 Mo.App. 613, 105 S.W.2d 14, 22, as follows:

"'* * * public liability policies ordinarily are not confined to, and do not contemplate, indemnity only against direct actions by injured persons against the insured; rather, they cover losses which he may suffer by reason of being liable over to another who has been compelled to pay for damages to persons injured because of the negligence or wrongful act of the insured, or his agents, which resulted in such injuries being inflicted. In other words, the insured may sustain a loss from liability to the public on account of personal injuries caused by them, or their workmen, and such loss be brought within the terms of the policy by circuity of action, and the case be as plainly within the policy terms as though the injured person's suit had been brought against them in the first instance.'"

See also Kibler v. Maryland Casualty Co., 74 Wash. 159, 132 P. 878; Collier v. Union Indemnity Co., 38 N.M. 271, 31 P.2d 697; Southern Ry. News Co. v. Fidelity & Casualty Co., 83 S.W. 620, 26 Ky.Law Rep. 1217; Swanson v. Georgia Casualty Co., 315 Mo. 1007, 287 S.W. 455.

The cases upon which the Guaranty Company relies are not persuasive. In New York Indemnity Co. v. Fidelity & Deposit Co., 159 Md. 73, 149 A. 855, the court stated that there was no evidence of liability imposed by law upon the insured, whereas in this case such lia-

bility has been established by judgment. In Union Paving Co. to Use of U. S. Cas. Co. v. Thomas, 3 Cir., 186 F.2d 172, the court seems to have proceeded on the theory that the only liability of the insured for the injury in controversy arose out of the indemnity agreement which it had executed. Here, as we have seen, there was liability of the insured for the injury without reference to the indemnity agreement. The same distinction exists with respect to the case of St. Louis Police Relief Ass'n v. Aetna Life Ins. Co., 236 Mo.App. 413, 154 S.W.2d 782. If these cases be construed as holding that an insured may not recover for a liability imposed upon him by law and for which he is primarily responsible, merely because he has undertaken to indemnify another against liability therefor, we cannot follow them. We need not decide, and do not decide, what rule would be applicable if the only liability of the Engineering Company were one assumed by contract, nor what rule would be applicable if the Engineering Company and the Harvester Company were ordinary joint tort feasors with no primary responsibility resting on the Engineering Company. What we have is a case where not only liability but also primary liability is imposed by law upon the Engineering Company and the only contract affecting the matter is an undertaking to indemnify the Harvester Company and save it harmless against such liability. The liability thus falls squarely within the coverage of the policy wherein the Guaranty Company agreed to pay on behalf of the insured "all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law * * * for damages * * * sustained by any person or persons and caused by accident". The fact that insured agreed to indemnify the Harvester Company against loss on account of claims arising out of such liability does not take them out of the coverage, for the liability remains liability imposed by law upon the insured, not liability assumed by contract. What

the contract did with respect to such liability was not to assume it for the insured but to guarantee the Harvester Company against loss on that account.

Affirmed.