W. O. SWANSON and F. L. SWANSON, Partners, Doing Business as SWANSON BROTHERS, Appellants v. GEORGIA CASUALTY COMPANY.

Division One, October 11, 1926.

1. **INDEMNITY INSURANCE: Injury to Employee of Another: Final Judgment: Indirect Claim.** Under an indemnifying insurance policy in favor of builders, wherein the insurer agreed "to pay the loss or expense arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered by any employee of the assured," the insurer must pay the amount of a final judgment rendered against a railroad in favor of its employee who was accidentally injured while he and other members of a crew of railroad employees, furnished by the railroad to the assured, were operating a locomotive engine and crane, also furnished by the railroad, in the construction of a building by the assured for the railroad, said helpers, engine and crane being furnished at the request of the assured and under an agreement that the assured was to pay for the use of the crane and pay the wages of the helpers; and the insurer is liable although the injured employee sued and recovered judgment against the railroad as its employee, and although a condition precedent of the policy was that "in the event of a final judgment upon any claim covered by this policy being rendered against the assured, the company will pay and satisfy said judgment" and no judgment was ever rendered against the assured; and the assured having agreed to indemnify the railroad to the extent of the damages it should be required to pay, and having paid the judgment, it was not necessary that the claim of the railroad against the assured be reduced to judgment in order that the assured may recover his loss from the insurer. The agreement of the insurer was "to pay the loss resulting from bodily injuries accidentally suffered by any employee of the assured," and it is immaterial whether the claim is brought home to the assured directly, or comes to the assured indirectly through the medium of the railroad, for in either case, if the assured must finally respond in damages, the insurer must indemnify him to the extent of his loss.

2. ———: **Employee: Compensation or Damages: Workmen's Compensation Law.** The Workmen's Compensation Act of Kansas contemplates that compensation for injury to a workman shall be made under its provisions only when both employer and employee have elected to be governed by it; and where the railroad had not accepted it, and the employee sued for bodily injuries, the judgment in his favor is to be considered damages. And an indemnifying insurance policy by which the insurer agrees "to pay the loss resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered by any employee of the assured" is one of general coverage, and not one which covers only compensation paid under said act, although it contains another clause by which the insurer agrees "to pay the compensation and furnish the medical and hospital services required by the Workmen's Compensation Law;" and if the assured agreed to pay the wages of the railroad employee lent to him, and to indemnify the railroad for damages recovered by the employee for bodily injuries, and has paid said judgment, the assured is entitled, under said general coverage clause, to be indemnified to the extent of his loss.

3. ———: **Who Is Employee of Assured?** The words "employee of assured" used in a clause of the indemnifying insurance policy by which the insurer agrees "to pay the loss resulting from claims upon the assured for damages on account of bodily injuries suffered by any employee of the assured" mean, as between the insurer and the assured, any person employed upon work designated in the policy, either directly or indirectly, and upon whose wages the assured pays a premium. In the policy here sued on they include all persons upon whose wages the assured was required to pay a premium and engaged in doing the work designated in the policy, whether employees of the assured in a direct sense, or employees of another person engaged in doing work for the assured in pursuance to a contract between the assured and such other employer. If the assured, erecting a house for a railroad, paid a premium on the wages of employees of the railroad, who were lent to the assured as helpers in building the house, under an agreeement that the assured was to pay their wages, and the insurer knew that the assured was paying a premium upon the wages of such helpers and after investigating the facts accepted the premium, such helpers were "employees of the assured," and for bodily injuries to one of them the insurer must indemnify the assured in the amount of his damages.

4. **PLEADING: Estoppel: Cause of Action.** A reply denying defendant's right to take a position inconsistent with the allegations of the petition is not an attempt to create a cause of action by estoppel. Where the assured, suing a casualty company on a policy indemnifying the assured against damages for bodily injuries suffered by an employee of the assured, alleges in his petition that a certain workman was an employee of the assured and was accidentally injured while engaged in work designated in the policy, and defendant in its answer denies that the workman was an employee of the assured, and alleges that if he were an employee he was under the protection of the workmen's compensation law, the assured, by alleging in his reply facts intended to show that defendant is estopped to set up such defenses, does not seek to create a cause of action by estoppel.

5. **DEPARTURE: Reply: Estoppel.** A reply which is consistent with the petition and whose substance is that defendant by its conduct and by the position assumed by it is estopped from replying upon its pleaded defenses, is not a departure.

Corpus Juris-Cyc. References: **Estoppel,** 21 C. J., Section 258, p. 1247, n. 40 New. **Liability Insurance,** 36 C. J., Section 14, p. 1061, n. 2; p. 1062, n. 4; Section 51, p. 1079, n. 22; Section 52, p. 1080, n. 34; Section 75, p. 1096, n. 58; p. 1097, n. 62. **Pleading,** 31 Cyc., p. 259, n. 56.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

REVERSED AND REMANDED.

*Grover, Tipton & Graves* and *Mosman, Rogers & Buzard* for appellants.

(1) The plaintiffs are entitled to a construction of the policy of insurance most favorable to them, and such a one, if possible, as not to defeat the claim to indemnity. Cunningham v. Union Cas. Co., 82 Mo. App. 614; Sonders v. Commonwealth Cas. Co., 246 S. W. 613; Stix v. Indemnity Co., 175 Mo. App. 171; Mathews v. Modern Woodmen, 236 Mo. 342; Still v. Ins. Co., 185 Mo. App. 550; La Force v. Ins. Co., 43 Mo. App. 530; Stary v. Ins. Co., 176 Mo. App. 580; Rosenbach v. Fid. & Cas. Co., 204 Mo. App. 154; Wiest v. Ins. Co., 186 Mo. App. 29; Schmol v. Travelers Ins. Co., 189 S. W. 600; Joyce on Insurance (2 Ed.) pp. 574, 575, 581; Cooley on Insurance, 636; Howell v. Security Mut. Life Ins. Co., 253 S. W. 411. (2) The policy indemnifies plaintiffs against all claims on account of bodily injuries suffered by an employee whether for workmen's compensation or damages. Stern & Co. v. Liberty Ins. Co., 209 Pa. 559; Trinity County Lbr. Co. v. Ocean Acc. & G. Co., 228 S. W. (Tex.) 114. (3) King was an employee of the plaintiffs. (a) Plaintiffs were independent contractors engaged in work over which the railway company had no control, and King was sent to work for plaintiffs, who took full charge of him and the work which he was doing at the time of his injury, and consequently were his special masters under the circumstances. Winkleback v. Great Western Mfg. Co., 187 S. W. 95; Hasty v. Sears, 31 N. E. (Mass.) 759; Wyman v. Berry, 75 Atl. (Me.) 123; Coughan v. City of Cambridge, 44 N. E. (Mass.) 218; Byrne v. Railroad Co., 61 Fed. 605; Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691; 1 Labatt's Master & Servant, sec. 52. (b) The Supreme Court of Kansas held the railway company liable to King on the theory that Swanson Brothers were the vice-principals of the railway company. If plaintiffs were the vice-principals of the railway company they were the masters of King and he was their employee within the terms of the policy. King v. Railway Co., 108 Kan. 372; Railroad v. Salmon, 14 Kan. 512; Hannibal Railroad Co. v. Fox, 31 Kan. 586; Dayharsh v. Railroad Co., 103 Mo. 570; Hoosier Stone Co. v. McCain, 133 Ind. 231. (c) The insurance company collected premium based upon the wages paid for King's services, after knowledge of the fact that he was injured and was making claim therefor, and at all times treated King as an employee of plaintiffs and is therefore now estopped from denying that King was plaintiffs' employee. 21 C. J. 1206, 1207,

315 Mo.—64.

1237, 1202; Greeley v. Provident Sav. Bk., 103 Mo. 212; Curtis v. Moore, 162 Mo. 442; Hartman v. Railroad Co., 192 Mo. App. 271, 182 S. W. 148; Penney & Penney v. Kramer, 182 S. W. 755; Woolfolk v. Home Ins. Co., 202 S. W. 627; Dyer v. Am. Ins. Co., 211 Mo. App. 476; Mining & Milling Co. v. Fire Ins. Co., 276 Mo. 524; Pauley v. Assurance Co., 261 S. W. 340; Harland v. Ins. Co., 192 Mo. App. 198; Humes Const. Co. v. Philadelphia Cas. Co., 32 R. I. 246.   (4) The claim which King made against the Santa Fe, and which plaintiffs were required to pay, was covered by the terms of the policy for the reason that it was a claim which resulted from injuries to plaintiff's employee.   Harnden v. Southern Surety Co., 200 Mo. App. 162; Fidelity & Cas. Co. v. Southern News Co., 101 S. W. 900; Creem v. Fidelity & Cas. Co., 126 N. Y. Supp. 555, affirmed 206 N. Y. 733; Lamkin v. U. S. F. & G. Co., 201 N. Y. Supp. 712; Black Mountain Railroad Co. v. Ocean A. & G. Corp., 172 N. C. 637, 175 N. C. 566; Kibler v. Maryland Cas. Co., 74 Wash. 159.   (5)   The Supreme Court of Kansas in the King case held that ''the railway company and Swanson Brothers were all one employer under the circumstances,'' and the defendant having pleaded the decision, is bound by it.   Henry v. Woods, 77 Mo. 277; Bennett v. Assur. Corp., 255 S. W. 1076.   (6)   The defendant assumed control of the defense of the King case and is therefore bound by the judgment.   Strong v. Phoenix Ins. Co., 62 Mo. 295; State v. Stone, 269 Mo. 334; State v. Coste, 36 Mo. 437; Robins v. Chicago, 4 Wall. 657.   (7)   The Workmen's Compensation Law of Kansas is not a defense to this action, because: (a) King was not subject to the act.   R. S. Kan. 1923, sec. 44-508; Harris v. Oklahoma Nat. Gas. Co., 91 Ok. 39; Ray v. Com. Acid Co., 227 S. W. 851.   (b)   The policy does not limit coverage to loss by reason of the Workmen's Compensation Act.   (3)   The defendant, having assumed charge of the claim, having assured plaintiffs of protection under the policy and having admitted its liability for the claim, has waived the right to claim that the liability is not within the policy provisions and is estopped from denying liability for the loss suffered by plaintiffs.   Royle Min. Co. v. Fidelity, & C Co., 126 Mo. App. 104, 161 Mo. App. 185; Fairbanks Canning Co. v. London G. & A. Co., 154 Mo. App. 327; Reiger v. London G. & A. Co., 202 Mo. App. 184; Gold Issue Mill Co. v. Penn. Fire Ins. Co., 267 Mo. 564; Ark. State Life Ins. Co. v. Allen, 266 S. W. 449; Dye v. New York Life Ins. Co., 227 S. W. 1062; Tinsley v. Aetna Ins. Co., 205 S. W. 78; Empire State Surety Co. v. Pac. Nat. Lbr. Co.. 200 Fed. 224; Employers Lia. Assur. Corp. v. Coal Co., 141 Fed. 962; Tozer v. Ocean A. & G. Co., 94 Minn. 478; Globe Nav. Co. v. Maryland Cas. Co., 39 Wash. 299.

*Henry S. Conrad, L. E. Durham* and *Hale Houts* for respondent.

(1) The policy should be considered as a whole, and when this is done it is unambiguous and the intention of the parties is clear. Strauss v. Imperial Fire Ins. Co., 94 Mo. 189; State ex rel. Ins. Co. v. Allen, 295 Mo. 317. (2) The policy did not cover any liability for King's accident which was not under the Kansas Compensation Act. R. S. Kan. 1923, chap. 44, art. 5; McRoberts v. Zinc Co., 93 Mo. 364; Shade v. Cement Co., 92 Kan. 146; King v. Railroad Co., 108 Kan. 372. (3) The liability for which plaintiff seeks recovery is not a liability on account of an injury to an employee, and is therefore not covered by the policy. King v. Railroad Co., 108 Kan. 372; Tel. Co. v. St. Louis, 268 Mo. 498; Grooms v. Morrison, 249 Mo. 550; George Loving & Co. v. Cattle Co., 176 Mo. 352; Mathieson v. Railroad, 219 Mo. 548; Lumber Co. v. Lumber Co., 253 S. W. 123; Hill v. Mining Co., 119 Mo. 30; McLane v. Mercantile Trust Co., 292 Mo. 122; Berry v. Ins. Co., 203 Mo. App. 468. (4) The policy does not cover the payment of indemnity to a third party. (5) No obligation on the part of the defendant to reimburse plaintiffs for the indemnity paid to the Santa Fe was created by estoppel and no such issue was made for the jury. (a) Estoppel was not pleaded in the petition and could not be made an issue by the reply. Tel. Co. v. St. Louis, 268 Mo. 498, Grooms v. Morrison, 249 Mo. 550; George Loving & Co. v. Cattle Co., 176 Mo. 352; Mathieson v. Railroad, 219 Mo. 548; Lumber Co. v. Lumber Co., 253 S. W. 123; Hill v. Mining Co., 119 Mo. 30. (b) Plaintiffs could not rely upon estoppel to create an obligation and authorize recovery in this case. McLane v. Mercantile Trust Co., 292 Mo. 122; Berry v. Ins. Co., 203 Mo. App. 468. (c) There was no evidence sufficient to make an estoppel an issue. Hammerslough v. Cheatum, 84 Mo. 19; State ex rel. v. Meunch, 217 Mo. 141; Davis v. Hall, 90 Mo. 665; Lamport v. Ins. Co., 219 S. W. 1023; Jacks v. Link, 191 Mo. 295.

LINDSAY, C.—At the close of all the evidence in the trial of this cause, the court gave the instruction offered by defendant that under the pleadings and the evidence plaintiffs could not recover; whereupon plaintiffs took an involuntary nonsuit, and the case is here upon their appeal from the order overruling the motion to set aside the nonsuit.

The plaintiffs were building contractors, and their petition was founded upon two policies issued on May 5, 1916, by the defendant company. The policy declared upon in the first count was designated as a Workmen's Compensation Policy, made to indemnify the plaintiffs against loss or damage from claims for bodily injuries sustained by plaintiff's employees. The second, is designated as a Public Liability Policy, and provided for indemnity to plaintiffs against loss

or damage from claims on account of bodily injuries suffered by persons not employed by plaintiffs, by reason of the operations in which plaintiffs were engaged. The second count of the petition was dismissed by plaintiffs, and the issues made here on appeal are those arising upon the terms of the first mentioned policy, and upon the other circumstances attending the transaction. Defendant introduced in evidence the second count of the petition and the policy therein sued upon.

At the time of the occurrence giving rise to the action, the plaintiffs, as independent contractors, were engaged in the erection of a building at Arkansas City, Kansas, for the Atchison, Topeka & Santa Fe Railroad Company. The contract between them and the railway company provided that plaintiffs should indemnify the railway company against any loss or damage suffered by it upon claims for personal injuries sustained by anyone by reason of the operations of plaintiffs in the construction of the building, and plaintiffs gave a surety bond to that effect. This contract was entered into after the execution of the policy sued upon. In the course of construction, the plaintiffs required the services of a locomotive engine, a crane, and a crew of men to operate the engine and crane for the purpose of moving and adjusting certain heavy trusses. An engine, with the engineer and four helpers, railway employees, was furnished by the railway company, upon the request of plaintiffs, and upon the agreement that plaintiffs were to pay a rental for the use of the crane and pay the wages of the men sent by the railway company for the purpose mentioned, during the time they were engaged in rendering that service.

On the 16th day of December, 1916, while the men sent to operate the engine and crane were being directed by one of the plaintiffs, one G. E. King, a member of the crew, was injured, through the negligence of plaintiffs. King did not make a claim against the plaintiffs, but, about the 18th of February, 1917, brought suit against the railway company on account of the injuries sustained by him, and recovered a judgment, which, upon appeal, was affirmed by the Supreme Court of Kansas (King v. Atchison, Topeka & Santa Fe Railroad Co., 108 Kan. 373). The railway company paid the judgment recovered against it, and demanded and received from the plaintiffs repayment of the amount of the judgment, interest and costs. The plaintiffs then instituted this suit, standing here upon the first count of the petition, and based upon the policy designated as the workmen's compensation policy. The first count sets up the execution of the policy and pleads that by its terms defendant insured the plaintiffs against loss by reason of claims upon plaintiffs for damages for bodily injuries accidentally suffered by any employee of the plaintiffs, and against any loss and expense arising or resulting

from claims upon the plaintiffs for damages on account of bodily in-
juries suffered during the time the policy was in force, by any em-
ployee of the plaintiffs. It then alleged that King was at the time an
employee of plaintiffs and alleged the occurrence of the injury to said
King, and that, as a result of his injury, claim was made, upon plain-
tiffs, and that as a result of said claim they were compelled to pay
and did pay the sum of $10,761.51, on May 23, 1921, and they asked
judgment for that sum, and also for a penalty, and for the recovery
of an attorney's fee, for vexatious refusal of defendant to pay the same.

Defendant's answer was (a) a general denial; (b) that King
brought suit against the railway company on account of his injuries,
claiming to be an employee of the railway company, and as such,
recovered judgment, and defendant pleaded that the affirmance of the
judgment by the Supreme Court of Kansas is *res adjudicata* of
that issue; (c) a special denial that said King was an employee of
plaintiffs, but, with the averment that if he be found to be such em-
ployee, the Workmen's Compensation Act of the State of Kansas
controls his right of recovery against the plaintiffs; that plaintiffs
had accepted the provisions of the act, and said G. E. King, before
his injury had not elected not to accept its provisions, which give
an exclusive remedy; that King, the alleged employee of plaintiffs
was a resident of Kansas, and at the time of his injury was working
for plaintiffs in Kansas, and his sole right of recovery against plain-
tiffs was under the Workmen's Compensation Act and therefore plain-
tiffs cannot recover in this case; (d) that by paragraph "A" of the
policy sued upon, construed with other provisions of the policy, no
obligation could attach to the defendant until after final judgment
obtained by King against plaintiff, and that no such final judgment
was ever obtained; (e) that plaintiffs failed to give notice of the
injury of said King, as provided by the policy. The answer in sub-
stance and by reference pleaded the provisions of the Kansas Com-
pensation Law and certain decisions of the Supreme Court of Kan-
sas construing the law.

The plaintiff's reply was, first, a general denial; next, an averment
that the premium for the policy was based on the entire pay-roll of
the plaintiffs; that plaintiffs paid to the defendant a premium, which
included and was based upon the amount plaintiffs paid for the
services of said King; that defendant accepted and retained the
premium, and thereby had waived the right to deny that said King
was an employee of the plaintiffs at the time in question. Plaintiffs
next pleaded that due and timely notice was given the defendant of
the injury to King; that defendant had actual notice thereof, and
thereafter assumed full charge of the claim; and denied plaintiffs
any right to interfere, or to settle the claim, and thereby waived its
right to claim that provision "C" of the policy, in respect to notice,

was not complied with. The plaintiffs further averred that they notified the defendant of the happening of the accident; that defendant took full charge of the claim, made investigation of the relationship of King to plaintiff's work, and with full knowledge of the circumstances, raised no question of its duty under said policy to protect the plaintiffs, and assured plaintiffs that they were protected, and that defendant would fully indemnify them against any loss which might be sustained by reason of said claim, and never at any time notified plaintiffs of its denial of liability, until after the affirmance of said judgment by the Supreme Court of Kansas; that after such affirmance, on March 3, 1921, and on March 10, 1921, defendant refused to settle said claim and in refusing assigned as its reason for refusal the fact that judgment had not been obtained against the defendant by King, and plaintiffs alleged that by reason of the foregoing the defendant had misled plaintiffs, to their prejudice, and had waived any claim of want of notice, and was estopped to deny that King was an employee of plaintiffs, and estopped to deny liability. In the brief for defendant it is conceded that notice of the injury was given.

Plaintiffs had been carrying insurance with the defendant for several years. Stephenson and Webb of Topeka, Kansas, were the general agents for defendant company, and issued the policies. One F. E. Whitney was employed by Stephenson and Webb as soliciting agent, and was also employed by defendant as a claim adjuster. Plaintiffs dealt with Whitney in applying for and receiving the policies, and in paying the premiums. From time to time they submitted to Whitney their pay-roll for ascertainment by him of the amount of premiums due, based upon such pay-roll. A day or two after the injury was sustained by King, plaintiffs made and delivered to Whitney a written notice and statement thereof. Thereafter, on December 30, 1916, the railway company sent its bill to plaintiffs for the rental of the crane, and the wages of the men used by the plaintiffs. Plaintiffs paid this to the railway company about February 10, 1917. The pay-roll of plaintiff, which included the wages paid for the services of these men, was submitted to Whitney, and premium based thereon was paid accordingly by plaintiffs to Whitney, and defendant had retained the same. At the time the pay-roll was submitted and premium based upon it paid, Whitney knew of the accident to King, and had discussed the same with the plaintiffs, and about January 5, 1917, in a letter written by him for Stephenson and Webb he asked the plaintiffs to inform Stephenson and Webb "exactly under what terms" they "arranged with the Santa Fe for the use of the crane and men." The letters were written by defendant's claim examiner, and show that defendant had under consideration the question whether King

was an employee of plaintiffs. The pay-roll did not name King or other helpers. It ran: "4 helpers, 36 hours," and stated the total wages.

The defendant company recognized the notice of injury given, carried the claim, and referred to it in its correspondence as: "Re Comp No. 9481, Swanson Brothers—Geo. E. King." The defendant was also informed that under the contract between plaintiffs and the railway company plaintiffs were bound to indemnify the railway company. This is shown by a letter to defendant on February 16, 1917, from Stephenson and Webb.

After King's suit was filed against the railway company, which was about February 18, 1917, the railway company notified plaintiffs thereof, and demanded that they take charge of that suit. Mr. Hennis, claim adjuster for the railway company, advised Whitney and F. L. Swanson, that if plaintiffs did not take charge of and settle the claim, the railway company would settle, and charge it to plaintiffs. The testimony for plaintiffs was to the effect that Whitney asked Hennis not to interfere; that under the terms of the policy, the insurance company would have to handle it, and would take care of it. Hennis said Whitney told him the defendant was willing to settle the claim under the compensation act, and asked Hennis if he (Hennis) would help him settle it that way, and Hennis said, "No."

After King filed the suit against the railway company, the defendant also engaged Mr. McKeever, an attorney of Topeka, to represent it in respect to the claim arising out of King's injury. McKeever represented defendant in other claims. After the employment of McKeever, Whitney and one of the plaintiffs went to McKeever and two or three talks took place between them. Whitney and plaintiffs were disturbed because no answer had been filed in the suit brought against the railway company by King. As a result of this McKeever prepared an answer, which was filed in that suit, in behalf of the railway company. He did not sign the answer as an attorney. He testified that upon his talk with Swanson and Whitney, and because Swanson was a good fellow, as an accommodation to the plaintiffs he prepared the answer, and prepared it in form in accordance with the wishes of the attorney for the railway company, and that he received no fee for doing so. There was testimony for plaintiffs that McKeever said he was going to act as attorney for this defendant and "sit in" the trial of the case of King against the railway company. He was not present, however, at the trial, which was conducted for the defense by attorneys for the railway company.

It is shown that the names of witnesses of the accident to King were given to McKeever by one of the plaintiffs. Letters of Stephenson and Webb to McKeever were introduced, written in 1917 and

early in 1918, stating that Swanson Brothers would like to know, and to be kept informed as to the time, when the suit of King would be tried, and also letters from Stephenson and Webb to defendant company, suggesting that it was to the interest of the defendant to provide for defending the King suit. The correspondence on the part of Stephenson and Webb was conducted by Whitney. It was shown that plaintiff Wm. O. Swanson attended court upon an occasion when the King suit was set for trial, but was not in fact tried. He afterwards rendered a bill of expenses for that, which defendant paid. The payment was made through Whitney, McKeever also having approved the charge. This payment was made in December, 1917.

Letters to Stephenson and Webb from the claim examiner of defendant, at its home office, written in the period shortly after the filing of King's suit, were introduced in evidence. The purport of those letters was that defendant would treat the claim as a straight workmen's compensation claim. In a letter dated March 13, 1917, to Stephenson and Webb, defendant's claim examiner said: "We will not defend the Railroad Company in so far as the liability of Swanson Brothers under our contract does not run to the Railroad Company. We do not insure our assured against contract liability. We insure them under a W. C. policy, which makes us liable to the insured for compensation due the injured under the Act, otherwise we have nothing to do with the case."

Referring to the connection of McKeever, the same letter stated: "We are merely having Mr. McKeever present at this trial to protect our interest, should such protection become necessary, regardless of the communication addressed to the railroad company by our assured. We will not defend the action on their behalf unless it is brought under the compensation law and then we will be very glad to defend it. Please understand that this case is to be handled along this line. Mr. McKeever is to sit in at the trial should it be necessary to defend the interests of this company." The writer of the letter further said: "I am fully convinced that the court will hold that the injured at the time of the accident was not an employee of the railroad, but an employee of our assured and came under the W. C. act. Instruct Mr. McKeever, if this finding is made, the case be immediately taken up by him for settlement, writing the amount it can be settled for, together with his recommendation." The letter quoted from was addressed to "Stephenson & Webb, Attention Mr. Whitney." It was in response to suggestions of Stephenson and Webb, made in letters to defendant, wherein Whitney, writing in the name of Stephenson and Webb, expressed the view that if King recovered from the railway company under the common-law liability, the defendant, under the terms of the policy, might be liable over to the

plaintiff, and the judgment might be for a greater sum than that recovered under the compensation law. There is no testimony, however, that Stephenson and Webb, Whitney, or anyone on the part of the defendant, informed the plaintiffs of the position of defendant as stated in these letters, written from the home office to Stephenson and Webb.

McKeever testified that on March 14, 1917, a few days after his talk with Whitney and Swanson, and after he had prepared the answer, he wrote to plaintiffs telling them he had done so, but had done so without authority from defendant, but only as a courtesy; that it was understood it did not bind defendant; that he was not authorized either to affirm or deny liability. Plaintiffs testified that they did not receive the letter.

Plaintiffs were not present at the trial of the case of King against the railway company. The testimony of plaintiffs was that they were not notified by anyone of the time of the trial, and is to the effect that they had no information that defendant would deny liability until after the decision was rendered in the King case upon appeal.

 . The policy recited that in consideration of the premium and the statements in the schedule attached, which were warranted to be true, the defendant agreed: "To administer and pay the compensation and furnish the medical services, hospital services and medicines, as required by the Workmen's Compensation Law or Laws designated in said schedule, on account of bodily injury received or suffered by any person or persons, while this policy is in force, including death resulting at any time therefrom.

"(2) To pay the loss and or expense arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered while this policy is in force, including death resulting at any time therefrom, by any employee or employees of the assured by reason of the business described in the said schedule, whether said injuries or death are accidentally suffered, or alleged to have been suffered, at the locations named in said schedule or elsewhere."

This was stated to be subject to certain conditions which were to be construed as conditions precedent. The first of these is as follows: "In the event of a final judgment upon any claim covered by this policy being rendered against the assured, the company will pay and satisfy said judgment and protect the assured against the levy of any execution issued on such judgment."

Statement 4 of the schedule described the place where assured's operations were to be carried on as "State of Kansas," "State of Oklahoma," and described the kind of business done as erection of a building for the Atchison, Topeka & Santa Fe Railroad Company.

Statement 5 was that assured had accepted and would continue to operate under the Workmen's Compensation Law of Kansas.

Statement 6 was as follows: "Statement 6: The premium shall be based upon the entire wages or compensation earned by all employees of the assured (as defined by the law described in Statement 5) engaged in the work herein described, including employees of contractors and sub-contractors to whom the assured may be liable under the terms of said law; unless such contractors or sub-contractors are insured in an authorized company or association or have otherwise discharged such obligation."

The policy contained provisions requiring assured to make a monthly report of their actual pay-roll for the computation of premium to be paid. To make at any time, upon request, a report of the actual pay-roll, and also gave defendant the right, at reasonable times, to make inspection of the assured's books and records. It also contains paragraphs designated as E and F, to which respective counsel call attention in their briefs, which are as follows:

"E. If, while this policy is in force, there shall be any change in or extension of the trade, business, profession or occupation of the assured as set forth in the schedule hereof, or if the assured shall make any structural alterations or repairs or do any class of work not described in said schedule (including any part of such work performed for assured by contractors or sub-contractors, to the employees of whom the assured is liable under the terms of the law described in Statement 5 of the schedule, provided such contractors or sub-contractors are not insured in any authorized company or association or have not otherwise discharged such obligation), the earned premium shall be adjusted upon the basis of the earned wages or compensation paid in or for every such trade, business, profession, occupation or work at the company's rate or rates respectively applicable thereto.

"F. Wages or compensation of employees as herein used shall include all wages or compensation of any nature paid employees whether compensated by salary, wages, for piece work, overtime or allowances and whether paid in cash—in whole or in part—in board, store certificate, merchandise, credits or any substitute for cash.

"As respects work covered by this policy where the actual wages or compensation of the employees of other parties performing such work under contract cannot be ascertained, same shall be estimated on basis of usual wages or compensation paid for the character of work performed, but same shall not be less than one-third of the full contract price for the work performed."

The answer prepared by defendant's attorney, McKeever, filed in the suit of King against the railway company, was put in evidence. That answer set up as the defense that King was in the service of

these plaintiffs as independent contractors, and under their direction; that the railway company had no control over him while so engaged, nor over the instrumentalities used, nor over the acts alleged as negligent, all of which acts it was alleged were done by these plaintiffs. Among the special findings of fact upon which the verdict was rendered in that case was a finding that the iron washer which fell upon and injured King was negligently left lying loose upon a truss by these plaintiffs.

The decision of the Supreme Court of Kansas was based upon facts therein set out, as found, that King being an employee of the railway company was directed by that company to perform the service which he undertook, in the manner in which plaintiffs might direct it to be done; that he was not informed he was changing employers, nor was anything disclosed to him to put him upon inquiry. The opinion also stated it was a principle that the employee does not change employers without his own consent. Under the circumstances recited, the holding was that the act of negligence of these plaintiffs was attributable to the railway company, as the employer who gave the order to King to do that work, and to do the work in accordance with the directions of these plaintiffs. Upon that, it was held that the railway company was liable to King, and in reference to the holding upon the relation of master and servant, it was said (108 Kan. 379): "If the enforcement of this rule works any hardship, that is a matter of adjustment between the two masters." That court in further expression of its views said that these plaintiffs and the railway company were "all one employer under the circumstances."

We are not advised as to the grounds upon which the trial court sustained the demurrer. Counsel for defendant insist that the policy does not insure against liability coming indirectly, or through the medium of any contract. In support of their contention that the policy covers indirect liability, counsel for plaintiff refer to Harnden v. Southern Surety Co., 200 Mo. App. 162; Fidelity & Casualty Co. v. Southern News Co., 101 S. W. (Ky.) 900; Creem v. Fidelity & Casualty Co., 126 N. Y. Supp. 555; Lamkin v. U. S. F. & G. Co., 201 N. Y. Supp. 712; Black Mountain Railroad Co. v. Ocean A. & G. Corp., 172 N. C. 637; Kibler v. Maryland Casualty Co., 74 Wash. 159. These cases support the contention that the liability of an insurance company under policies of this kind, does not depend necessarily upon the manner in which the claim is enforced against the assured, whether directly or indirectly, but upon the character of the original causation, that is, bodily injury suffered by an employee of the assured. Among them are cases wherein there was an agreement on the part of the assured to indemnify the party whose negligent act caused the injury, and where such party was held liable to the person injured.

Among cases examined in our own research, we find Board of Trade Livery Co. v. Georgia Casualty Co., 160 Minn. 490, wherein is construed the effect of a provision practically identical with paragraph 2 above quoted from the policy here in question. In the Minnesota case, certain passengers of the Northern Navigation Company were entitled to a ride in automobiles belonging to the plaintiff under a contract between the navigation company and the plaintiff. The passengers were injured while in an automobile owned and operated by the plaintiff under the contract, and recovered judgment therefor against the navigation company. That company paid the judgment, and sued and recovered judgment against the plaintiff. The plaintiff having satisfied the latter judgment, brought the suit referred to for indemnity upon its automobile liability policy issued by the defendant. In setting out the terms of the policy the court said:

"By this policy plaintiff was indemnified 'against loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered, while this policy is in force, including death resulting at any time therefrom, by any person or persons, not employed by the assured, by reason of the ownership, maintenance or use of any of the automobiles' covered by the policy.

"There were the usual 'exceptions,' one of which was any 'liability of others assumed by the assured under any contract or agreement, oral or written.' The policy provided that no action should be brought against defendant unless to enforce payment by the company (defendant) 'of a final judgment rendered after a trial in a suit against the assured for damages.' "

After discussing certain questions not necessary to mention here, the court further said:

"Going now to the controlling question in the case, it must be resolved against defendant for the simple reason that what it insured plaintiff against was not, in the last analysis, judgments for damages or claims of any kind, but 'loss arising or resulting from claims upon the assured for damages on account of bodily injuries accidentally suffered or alleged to have been suffered.' Liability depends, therefore, not on the manner in which claims are enforced, as being indirect rather than direct, but upon the agency of causation, i. e., claims 'for damage on account of bodily injuries.' The amount required to reimburse the Northern Navigation Company for the Thurston judgments is so clearly a loss of the kind insured against, that it ought not to require argument to demonstrate that it is within the policy coverage. If the claim had been enforced by the Thurstons against plaintiff directly, there would have been no suggestion by defendant that it was not liable. It would have assumed the defense against

those claims or would have settled them. That is the ordinary and inescapable course in such cases.

"The fact that the same claims now come through the medium of the navigation company, against which they were first asserted, certainly cannot change their character. That the navigation company happened to be liable to the Thurstons does not alter the case. The merits of the case are not thereby changed so as to permit defendant's escape from a liability clearly assumed by its contract. However or by whomsoever the claims were finally brought home to the plaintiff so that it had to respond in money, they were still a 'loss' assured against by the policy in question. Defendant cannot escape liability because of the devious and unusual route followed in the final enforcement of the claims against plaintiff. This conclusion is fortified by the language of condition 'D' of the policy, which imposes upon defendant the express obligation to discharge all final judgments against the assured (plaintiff) 'on account of accidents covered by this policy.'

"The exception from defendant's contract responsibility of 'liability of others assumed by the assured under any contract or agreement' cannot be allowed to relieve defendant from its obligation to insure plaintiff against loss arising from its own liability for personal injuries suffered by its passengers. That is the kind of liability to which plaintiff has been compelled to respond. In reimbursing the navigation company for its outlay on account of the Thurston judgments, plaintiff was making good its own liability and its own wrong and not a primary liability or wrong of the navigation company, a conclusion the correctness of which is not altered by the circumstance that the Thurstons in the first instance were able to collect from the navigation company. Notwithstanding that fact, the initial wrong, giving rise to the cause of action and the resulting 'loss,' was the act of the plaintiff, and the resulting liability was its liability and one of those loss from which was clearly insured against by defendant.

"The case is analogous to those where one of two joint tortfeasors may compel indemnity from the other. That is allowed notwithstanding a joint original liability, where, as between themselves, only one is at fault, and his wrongful act or omission is a breach of a duty owed to the other, and the primary cause of the injury."

What was there said is applicable here on most of the features of this case. In that case there was no question raised as to the relation between the plaintiff and the parties injured, and no contention that the original liability was to be determined only by a law such as the workmen's compensation law of Kansas. It may also be mentioned that the policy here under consideration does not contain the exception referred to in the Minnesota case against "liability of

others assumed by the assured under any contract," but the policy sued on under the second count in this case does not contain that provision. The mere fact that the liability sought to be enforced is indirect, and the further fact that plaintiffs contracted to indemnify the railway company, do not take the case outside of the obligation contained in paragraph 2, if the original liability was founded upon bodily injuries suffered by one who, within the meaning of the policy, was an employee of the assured. The provision in the policy called a condition precedent, which has been heretofore set out, was not a condition that before the defendant became liable to pay, there must be a judgment rendered against the assured, but was an agreement by defendant that in the event a judgment should be rendered against assured, upon any claim covered by the policy, defendant would satisfy such judgment. The loss to plaintiffs was definitely ascertained by the judgment against the railway company, and was sustained when plaintiffs paid that judgment. Considering the condition in connection with the broad terms of paragraph 2, we hold it was not necessary that the claim of the railway company against plaintiffs be reduced to judgment.

It is the contention of counsel for defendant that the policy did not cover any liability for King's injuries which was not under the Kansas Compensation Act; Revised Statutes of Kansas, 1923, Chapter 44, Article 5. This is upon the theory that the act provides an exclusive remedy for persons employed by an employer, who is operating under the provisions of the act. By force of that law, employers who are subject to it and their employees are held to have elected to be within its provisions unless they file a declaration rejecting it. As to such, the remedy is exclusive. [McRoberts v. Zinc Co., 93 Kan. 364; Shade v. Cement Co., 92 Kan. 146.] In Smith v. Cement Co., 94 Kan. 503, it is said: "The Workmen's Compensation Act clearly contemplates that compensation for injury to a workman shall be made under its provisions only where both the employer and the employee have elected to be governed by it. This is implied by the option given to each to accept or reject it."

If an employer is such that he is within the provisions of the act and either he or his employee has not accepted it, the employee is left to his suit for damages. If the employer is operating under the act, but the employee has rejected it, and the employee sues for damages for injuries caused by want of due care on the part of the employer, the defenses of assumption of risk and of contributory negligence of the employee, and the fellow-servant doctrine, are saved to the employer by the act. If conditions are reversed, the act takes away the defenses mentioned from the employer, who is within the terms of the law, but has elected not to accept it.

It is conceded in this case that the railway company, King's general employer, was not under the compensation act. It appears from the opinion in the suit of King against the Railway Company, 108 Kan. l. c. 379, that the court considered and passed upon the question of King's negligence, and whether he assumed the risk. It was there said (108 Kan. 379): "The plaintiff who was working at the other end of the truss which was about nineteen feet long was without fault, nor did he assume any such unusual risk as the one which injured him."

Counsel discuss the various provisions of the policy. Counsel for plaintiff contend that this policy is one of general coverage, and counsel for defendant insist that it covered no liability except such as was within the compensation act. It is conceded on both sides, as it must be, that all the provisions of the policy are to be considered in ascertaining its meaning, and, that if the terms are uncertain, or are susceptible of two meanings that meaning is to be given which is more favorable to the assured. Paragraph 1 above quoted, uses the word "compensation" in characterizing what is to be paid as required under the compensation law, designated in the schedule; but paragraph 2 uses the word "damages" in reference to a claim made for bodily injuries suffered by the employee by reason of the *business designated in such schedule* at the locations named therein or *elsewhere*. It requires the insurer to pay the "loss and expense arising or resulting from claims upon the assured for damages on account of bodily injuries suffered by any employee of the assured by reason of the business" and whether suffered at the places named or elsewhere. Paragraph 1 directly refers to the compensation law, but paragraph 2 contains no reference to that law. As between plaintiffs and defendant the meaning of the term, employee of the assured, is to be determined by the terms of the policy, and the policy is susceptible of the construction that the term meant anyone employed upon the designated work, either directly or indirectly, and upon whose wages plaintiffs were required to pay premium.

Considering all the terms of the policy and therewith necessarily all the provisions as to the requirement of payment of premiums, it is fairly susceptible of the construction that the policy requires payment of premium upon the wages of all persons doing work in the business designated whether they are employees of plaintiffs themselves in the direct sense, or employees of other persons, where, by contract between plaintiffs and such other employers, the employees of the latter are procured to do a part of the work designated, and we hold this to be true, although such other employer was not operating under the compensation act.

King, as an employee of the railway company was procured by plaintiffs to do a part of such work, through an agreement with

the railway company. The railway company was not under the compensation act, and King, as its employee, was not; but King was so far an employee of plaintiffs under the terms of the policy, that premium was payable upon his wages and upon the wages of the other men in the like relation. The defendant so construed the policy, and accepted the premium after investigating the facts touching the relation of King to plaintiffs, and has retained the premium. The record shows that the defendant carried a reserve especially referable to its liability on account of the injury to King. There is no claim that there was any concealment of the facts upon the question of the relation borne by King, or upon the question of the liability of plaintiffs to pay premium thereunder, or that defendant was misled as to any fact.

Counsel for defendant urge that no obligation on the part of defendant to reimburse plaintiffs for the indemnity paid to the Santa Fe Railway was created by estoppel, and that no such issue was made for the jury, because they say estoppel was not pleaded in the petition, and could not be made an issue by the reply, relying in that regard upon the decisions in Telephone Company v. St. Louis, 268 Mo. l. c. 498; Grooms v. Morrison, 249 Mo. l. c. 550; Loving Co. v. Cattle Co., 176 Mo. l. c. 352; Mathieson v. Railroad, 219 Mo. 548. They further urge that plaintiffs could not rely upon estoppel to create an obligation and authorize recovery under the holding in McLain v Mercantile Trust Co., 292 Mo. l. c. 122; Berry v. Insurance Co., 203 Mo. App. l. c. 468. As to these contentions it may be said that plaintiffs in their reply, as we construe it, do not seek to create a cause of action by estoppel. They alleged in their petition that King was an employee. The reply was a denial of the right of defendant to take a position inconsistent with the allegation of the petition. Defendant, in its answer, specifically denied that King was an employee, but alleged that if he was, he was under the Kansas Compensation Law, and also set up the holding of the Supreme Court of Kansas, in the suit of King against the railway company, as constituting an adjudication of King's relation to plaintiffs, binding upon the plaintiffs.

Counsel for defendant also urge that the reply was a departure from the petition. Upon that it must be said that defendant went to trial without suggestion or objection that the reply constituted a departure, or that it set up a new cause of action. We do not construe the reply as a departure from the petition, but as consistent therewith, in that, the substance of the reply is that defendant by its conduct and by the position assumed was estopped from relying upon the defense that King was not an employee of the plaintiffs.

Conceding that the general relation of employer and employee existed between the railway company and King, that is not incon-

sistent with the existence of the relation of employer and employee between plaintiffs and King under the terms of the policy, which made the wages of King the basis of premium, because of the fact that he, although the employee of another, was doing a part of the designated work of plaintiffs. For the purpose of collection of premium, and of providing indemnity against loss to plaintiffs, resulting from a claim for bodily injury suffered by him through the negligent acts of plaintiff, he was an employee of plaintiffs.

In consideration of the foregoing we hold that the court erred in sustaining the demurrer, and in denying the motion to set aside the involuntary nonsuit.

The judgment should be reversed and the cause remanded. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.