CONTINENTAL CASUALTY COMPANY,
a corporation, Plaintiff-Appellee.

v.

AMERICAN FIDELITY & CASUALTY
COMPANY, a corporation, Defendant-
Appellant.

CONTINENTAL CASUALTY COMPANY,
a corporation, Plaintiff-Cross-
Appellant,

v.

AMERICAN FIDELITY AND CASUAL-
TY COMPANY, a corporation, De-
fendant-Cross-Appellee.

Nos. 12779, 12780.

United States Court of Appeals
Seventh Circuit.

March 4, 1960.

Rehearing Denied March 28, 1960.

**382**

John E. Cassidy, Jr., Peoria, Ill., John E. Cassidy, Sr., Peoria, Ill., Cassidy & Cassidy, Peoria, Ill., of counsel, for plaintiff-appellee and cross appellant.

William J. Voelker, Jr., Peoria, Ill., Lyle W. Allen, Peoria, Ill., Heyl, Royster & Voekler, Peoria, Ill., of counsel, for appellant-cross appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

This is a diversity action brought by plaintiff, Continental Casualty Company (Continental), against defendant, American Fidelity and Casualty Company (American). Continental seeks reimbursement for judgments it paid in certain personal injury actions which it defended, alleging that the legal obligation to defend and to pay was that of American. After the issues were closed and certain interrogatories were answered, both parties filed motions for summary judgment supported by appropriate affidavits.

The district court denied American's motion for summary judgment and granted that of Continental and entered judgment in favor of Continental (plaintiff) against American in the sum of $21,050, that being the amount it paid in satisfaction of the personal injury judgments, and in addition the sum of $2,377.90 it expended for attorney's fees in the personal injury actions, a total of $23,427.90. This judgment is the subject of appeal No. 12779 by American. The district court denied Continental's claim for interest at the rate of 5% per annum from March 17, 1955, the date the personal injury judgments were paid, to the date of judgment below. This denial of interest is the subject of Continental's cross-appeal No. 12780. We shall consider both appeals together.

This litigation arises out of an automobile accident on April 8, 1952 in Fulton County, Illinois. Frank L. Moon, Lawson G. Shryack and Leslie Cameron each received personal injuries in that accident. On April 2, 1954 suits were filed by the three injured persons in the Circuit Court of Fulton County, Illinois, against Southwest Freight Lines, Inc., T. A. Kirchner and Carl Page, each plaintiff demanding damages in the amount of $50,000.

On March 28, 1952 Continental issued a motor vehicle liability insurance policy insuring Southwest Freight Lines, Inc.,

with limits of $100,000 for injury to one person, $200,000 for injuries resulting from one accident and $100,000 for property damage. This policy provided coverage from February 29, 1952. On March 19, 1952 American issued a motor vehicle liability insurance policy insuring T. A. Kirchner, specifically covering a tractor and trailer owned by him. American's policy provided limits of liability of $15,000 for injury to one person, $75,000 for injuries resulting from one accident and $5,000 for property damage. Each of these policies was in full force and effect on April 8, 1952, the date of the accident in question.

After the suits were filed in the state court, American was requested to defend but refused, claiming that its policy provided no coverage for the defendants arising out of such accident. Thereafter, Continental defended these actions, claiming at all times that it was the duty of American under its policy to provide primary coverage to the defendants in the Fulton County suits to the extent of the limits of its policy and contending further that the insurance coverage provided in Continental's policy was limited to excess insurance over and above the amount of the limits in American's policy.

Subsequently, Continental negotiated a compromise settlement of the three personal injury claims; and on March 17, 1955, after a hearing in the state court, agreed judgments were entered against the defendants and in favor of each plaintiff as follows: Moon, $10,050; Shryack, $7,500; and Cameron, $3,500. On the same day Continental paid the respective amounts in full, and the judgments were recorded as satisfied. Continental also paid its attorneys the sum of $2,377.90 for their services in those actions. It is the recovery of these sums from American that Continental seeks in the case at bar.

The pertinent facts surrounding the automobile accident above referred to establish the following situation at the time the accident occurred. Kirchner owned the tractor-trailer outfit insured by American. Kirchner leased this equipment to Southwest Freight Lines, Inc. (Southwest) under a written single trip lease providing for a trip starting at St. Louis, Missouri, on April 7, 1952 and completing delivery to a consignee in Davenport, Iowa, not later than April 8, 1952. The lease provided in part:

"It is understood by the parties that the lessee [Southwest] shall procure in its name P.L. and P.D. and cargo insurance as may be required by the law, and this insurance shall expire at the time of delivery of the load covered by this lease.

"It is further understood by the parties that the lessee shall exercise absolute control of the vehicle subject thereto, and shall exercise due care in the use of said vehicle(s) and shall at the expiration of the term of this lease, yield said vehicle to the lessor [Kirchner] without further notice. This lease will terminate when lessor has completed delivery of load covered by this lease."

Kirchner was directed by Southwest to pick up the cargo in East St. Louis and went there for that purpose. Kirchner employed Page as the driver of the equipment and accompanied Page on this trip. Immediately prior to the collision Page was attempting to turn the tractor-trailer around on the highway. Kirchner was outside with a flashlight directing Page in this operation. The automobile driven by Moon came along the highway and collided with the tractor-trailer with resulting injuries to the three occupants of the Moon car.

██ American, on behalf of Kirchner, contends at this point that Southwest was solely responsible for the accident under the terms of its trip lease and that Southwest was in control of the Kirchner vehicle and had direction of it. We do not agree. We are in accord with the finding of the district court that Kirchner was in control of his own equipment, that Page was his employee and that Southwest had merely engaged Kirchner to deliver the cargo to its destination. We hold that the relation-

ship existing between Kirchner and Southwest is not such as will excuse Kirchner from liability for this accident. There is nothing here to indicate that American has no liability for the alleged negligence of Kirchner and Page.

American next contends that, in the alternative, the two insurance carriers should share pro rata in the payment of the judgments in Fulton County and that Continental's coverage was not excess insurance. *It is undisputed that American had no excess coverage provision in its policy.* The central issue before us in this appeal is whether Continental's policy provided excess coverage or whether it furnished concurrent or co-insurance with American.

■ In an action involving the respective liability of two automobile liability insurers in a particular case, the question is to be determined from a construction of the language employed by the insurers in their respective policies. McFarland v. Chicago Exp., 7 Cir., 1952, 200 F.2d 5, 7; Zurich General Accident & Liability Ins. Co. v. Clamor, 7 Cir., 1941, 124 F.2d 717, 720.

We look now to the policy provisions. Continental's policy insuring Southwest, in Condition 13 "Other Insurance", provides for pro rata concurrent insurance, except that "with respect to loss arising out of the use of any non-owned automobile" the insurance provided shall be "excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise." Condition 3 (2) defines a "hired automobile" as "an automobile used under contract in behalf of, or loaned to, the named insured * * *." Condition 3(1) defines an "Owned Automobile" as one owned by the named insured, and Condition 3(3) defines a "Non-Owned Automobile", as any other automobile. It is conceded that Kirchner's tractor-trailer in this case is a "hired automobile." American contends that under the foregoing Condition 13 "excess insurance" applies only to non-owned automobiles and that the con-

current coverage must extend to Kirchner's hired automobile.

■ However, in addition to Condition 13, Continental's policy has two special endorsements, "Earnings Basis-Truckmen Endorsement" and "Other Insurance Endorsement", in each of which it is specifically provided that insurance for bodily injury or property damage liability with respect to a loss arising out of the use of a *hired automobile* shall be *excess insurance* over any other valid insurance available to the insured. Each of these endorsements is shown to be effective as of February 29, 1952 and was executed by Ralph G. Trogdon, Licensed Resident Agent. Another endorsement dated February 21, 1952 gives authority to Trogdon to make a valid countersignature to the policy with reference to that portion of the risk located in Missouri. Condition 16 of the policy has the standard provision that the terms of the policy cannot be waived or changed except by endorsement signed by the president or secretary of the company.

American strongly insists that these two endorsements are not applicable in this case because the accident occurred in Illinois and Trogdon's authority merely extended to Missouri. This is a specious argument without merit. While we think the endorsements are valid and applicable in any event, it will be noted that they are effective February 29, 1952. The master policy of which they are a part was dated March 28, 1952 and was executed by the president and secretary of Continental. It is clear to us, and we so hold, that the execution of a master policy by the proper officers of an insurance company ratifies and approves and makes an effective part thereof any prior or contemporaneous endorsements affixed thereto.

■ The two endorsements providing for excess insurance with respect to a loss arising out of the use of a hired automobile are held to be valid and enforceable. They are controlling over and modify any general "other insurance" provision in the body of the policy. They do not constitute "other valid and col-

lectible insurance" within the meaning of a primary policy with an omnibus clause such as found in American's policy. They provide only excess insurance coverage. American Surety Company of N. Y. v. Canal Ins. Co., 4 Cir., 1958, 258 F.2d 934, 936; McFarland v. Chicago Exp., 7 Cir., 1952, 200 F.2d 5; Zurich General Accident & Liability Ins. Co. v. Clamor, 7 Cir., 1941, 124 F.2d 717.

■ American further contends that Continental had an obligation to defend Southwest and that in doing so it also undertook the defense of Kirchner and Page; that Continental voluntarily assumed to pay all of the indebtedness created by the agreed judgments and thus wiped out any obligation of Kirchner and Page which might be separate from that of Southwest; and that as such a volunteer it is estopped from seeking contribution or reimbursement. The short answer to all of this is that Continental's action in the instant case is not for contribution but is in subrogation under the terms of its policy. Continental takes the place of Southwest, its insured; and since American's insured is afforded no protection under Continental's policy in this case, there being no concurrent or co-insurance payable on a pro-rata basis, it cannot be said that this is a suit for contribution. This is an action governed by contractual subrogation in favor of an excess insurer against the primary insurer.

Even if American could invoke an equitable defense, it would necessarily be of no avail. Continental had a duty to defend Southwest. After American's refusal to come in, Continental had a right to conclude the matter as it did. Continental was not a volunteer. American's policy limits were less than the demands in the Fulton County suits.

In case of default Continental had a substantial liability exposure as an excess insurer. See, Aetna Casualty & Surety Co. v. Buckeye Union Cas. Co., 1952, 157 Ohio St. 385, 105 N.E.2d 568, 31 A.L.R.2d 1317.

We have considered the authorities cited by American and do not find them applicable. Likewise, we have considered American's other contentions and find them to be without merit.

Finding no error, the judgment appealed from in No. 12779 awarding Continental the sum of $23,427.90 must be affirmed.

■ In appeal No. 12780, the sole question is whether Continental is entitled to recover interest at the rate of 5% per annum from March 17, 1955 to the date of judgment in the district court below. The trial court denied interest.

The right to interest arises, if at all, only by virtue of the Illinois Interest Act, Smith-Hurd Ill.Ann.Stat., Ch. 74, § 2.[1] Continental cites and relies upon Lewis Mach. Co. v. Aztec Lines, 7 Cir., 1949, 172 F.2d 746. That case is distinguishable from the case at bar. Interest was allowed there as a part of the recovery for a breach of a written contract, an insurance contract. There was an obligation on the part of the insurance carrier to pay a liquidated claim. It refused to pay its insured, and the court properly held that interest was a part of the damages the insured was entitled to recover.

In the instant case Continental does not seek recovery of damages for the breach of its policy. It seeks reimbursement by way of subrogation. This is not an action by an insured against an insurer for failure to comply with policy provisions. The recovery was dependent upon the construction of policy provi-

1. "Creditors shall be allowed to receive at the rate of five (5) percentum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."

sions in two separate contracts. We believe this case is more nearly controlled by the later holding in Lumbermen's Mut. Ins. Co. v. Slide Rule & Scale Eng. Co., 7 Cir., 1949, 177 F.2d 305, 310–312, relied upon by the trial court.

We hold that the trial court did not err in denying interest and that the judgment appealed from in No. 12780 must be affirmed.

The judgment of the district court as appealed from in Nos. 12779 and 12780 is

Affirmed.