Marshall F. DANCY, Plaintiff-Appellee,

v.

WILLIAM J. HOWARD, INC., a corporation, Defendant-Appellant.

No. 13399.

United States Court of Appeals
Seventh Circuit.

Dec. 28, 1961.

Robert V. Hogan, Melvan M. Jacobs, Francis E. Schlax, Chicago, Ill., for appellant. Quinn, Jacobs, Barry & Latchford, Chicago, Ill., of counsel.

Thomas J. Johnson, Jr., Edward J. Griffin, Chicago, Ill., for appellee. Defrees, Fiske, Thomson & Simmons, Chicago, Ill., of counsel.

Before HASTINGS, Chief Judge, and KILEY and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

Marshall F. Dancy (plaintiff-appellee) brought this diversity action against William J. Howard, Inc. (defendant-appellant) to recover the amount due under an agreement for the services of plaintiff. The cause was tried to the court without the intervention of a jury. Judgment for plaintiff was entered in the amount of $20,000 with interest, and this appeal followed.

On October 3, 1951, defendant executed a preliminary agreement with the City of Dunbar, West Virginia and its Bridge

Commission contemplating the construction of a bridge over the Kanawha River. The agreement provided that defendant would do preliminary engineering work, make traffic reports, and arrange for financing the project and all costs incident thereto through the sale of bonds. On November 5, 1951, plaintiff accepted an assignment from defendant of that part of the preliminary agreement relating to the arranging of financing.

After signing the final bridge construction contract with the City and Bridge Commission on December 29, 1951, defendant entered into an agreement with Marshall Dancy & Associates. This agreement was in the form of a letter to Marshall Dancy & Associates from defendant and was a re-write of a letter that had previously been sent to defendant from Marshall Dancy & Associates. It was dated January 18, 1952. The pertinent paragraph of this agreement provides:

"Marshall Dancy & Associates have agreed to provide financing for construction of said bridge, and to continue to provide said service in connection therewith until such time as the project has been completed. Thereupon for the aforesaid financing and additional services, William J. Howard, Inc., has agreed to pay Marshall Dancy & Associates, through Marshall Dancy [plaintiff], the sum of $100,000 to be paid in monthly installments starting at the time William J. Howard, Inc., receives his first partial payment under its contract and in amounts in direct proportions to the ratio of the construction contract monthly payments to the total construction contract. * * *"

No question is raised as to the foregoing agreement, and the full amount of $100,000 therein mentioned was paid to plaintiff by defendant between July 1, 1952 and January 1, 1954.

The supplemental agreement sued upon by plaintiff was accepted by defendant on the same day as the above agreement.

The pertinent parts of this contract provide:

"This supplemental contract on the Dunbar Bridge is in addition to that signed the 18th day of January, 1952, in the sum of $100,000 and it is to be considered in payment for *services outside the purely functional aspect of the other contract,* as well as to make up for a lack of personal earning power in the above stated principal contract.

"This contract shall not become payable until William J. Howard, Incorporated, has received final payment for construction of the said Dunbar Bridge.

"The amount herein agreed to between the principals shall be $20,000 (Twenty thousand dollars).

"If there is no contract nor any financing, there will be due no fees or expenses from William J. Howard, Incorporated, to Marshall F. Dancy." (Emphasis added.)

The date and amount to be paid plaintiff were inserted therein by William J. Howard as president of defendant. Spaces for these items had been left blank by plaintiff when the supplemental contract was sent to defendant. No part of the agreed payment of $20,000 to plaintiff has been paid by defendant.

The trial court admitted, over defendant's objection, parol testimony as to what was meant by "services outside the purely functional aspects of the other contract," as this phrase appears in the supplemental agreement.

Under these agreements, Marshall Dancy & Associates handled the City's bond issue for financing the bridge construction. Marshall Dancy obtained the consent of the Federal Reserve Credit Restraint Committee for the bond issue and dealt with right-of-way problems.

The bridge was ultimately constructed, and under defendant's contract with the City of Dunbar and the Bridge Commission it became entitled to receive a bonus for early completion in the amount of $197,340. Of this bonus, $97,340 was un-

paid at the time of trial. On March 10, 1954, the final payment for construction (the total amount paid being $2,846,481.-89), as distinguished from bonus, was paid to defendant. On May 13, 1954, engineers from the City and Bridge Commission issued their certificate of completion of the bridge construction.

Defendant contends that the trial court erroneously permitted parol testimony to vary the terms of the contract; that the supplemental contract was without consideration in that plaintiff was obliged by the original contract to perform the services called for in the supplemental contract; in the alternative, that this suit is premature since it has not received "final payment for construction" of the bridge because of the balance due on the bonus payment; and finally, that the trial court's award of interest on the amount of the judgment was erroneous. These contentions present the issues for consideration in this appeal.

■ The trial court did not err in admitting parol evidence to explain the meaning of "services outside the purely functional aspects of the other contract." At the time defendant objected to the explanation offered by plaintiff, the trial court remarked, "Well, I am frank to say that I do not understand what it means," and permitted the witness to answer the inquiry. We agree that this clause in the agreement is ambiguous and required an explanation.

Plaintiff then testified that the "functional aspects" meant "providing the money, the sale of the bonds." It is undisputed that plaintiff did provide the required amount of financing for the bridge construction project.

Plaintiff further testified that he successfully handled problems dealing with rights-of-way and that the bonds to be issued could not be delivered without the consent of the Federal Reserve Credit Restraint Committee, which had been formed as a result of the Korean War. These services were actually within the province of the City Attorney of Dunbar, West Virginia, who was unable to per-

form them because of lack of experience in this type of work. In this connection, plaintiff was required to do considerable research and engage in time consuming activities in order to establish the military necessity for the bridge project. Plaintiff rendered these services and the trial court found that they were of benefit to defendant.

■ The admission of such testimony comes within the rule "that parol or extrinsic evidence is admissible to explain the purpose of the execution of a written instrument, what the parties intended, the consideration for its execution and the circumstances surrounding its execution." Lincoln Nat. Life Ins. Co. v. Horwich, 7 Cir., 115 F.2d 892, 895-96 (1940).

■■ We are satisfied from our examination of the record that services rendered by plaintiff pursuant to the supplemental contract were not in contemplation of those already required under the primary agreement. Defendant itself, through its president, actually fixed the amount plaintiff was to receive for such services by filling in the sum of $20,000 in the blank space left by plaintiff in the letter-agreement and at that time endorsed defendant's acceptance thereon. The agreement made specific reference to the services plaintiff was to perform individually in return for this payment. This recitation in the agreement is an adequate and valid consideration for its execution.

The parties have devoted considerable effort in trying to demonstrate whether the two agreements were one contract or separate agreements. The trial court found that the two instruments were executed contemporaneously and that they were but a single contract. We think this dispute is immaterial to the resolution of this appeal. In either event, plaintiff admittedly rendered the services bargained for. These were different from and outside those he was already obligated to perform. Defendant is bound to pay him the sum it fixed as the value of such services.

We are not impressed with defendant's alternative argument that plaintiff's cause

of action, if any exists, has not matured. The supplemental agreement provides that the $20,000 in suit shall not become payable until defendant "has received final payment for construction of the said Dunbar Bridge." Defendant contends that the unpaid balance of $97,340 due it as part of the bonus payable for early completion is a part of the payment due it for construction and that, therefore, it has not yet received its "final payment for construction."

Defendant's construction contract with the City and its Bridge Commission provides that, subject to certain changes and extras, the defendant shall be paid the sum of $2,798,000 "plus the amount earned by the Contractor [defendant] as bonus for early completion, or minus the amount owed by the Contractor as liquidated damages for delayed completion, as the case may be. [and that] Such total amount is the contract lump sum price."

Defendant equates "the contract lump sum price" in the construction contract with "final payment for construction" in the supplemental agreement in suit. Plaintiff was not a party to the construction contract. The construction contract followed the supplemental agreement, and plaintiff never saw it until the trial. It was not referred to or made a part of the supplemental contract. Plaintiff could not be bound by its contents in the construction of the supplemental agreement.

█ It is quite clear that the schedule of payments by defendant to plaintiff of the $100,000 to be paid under the primary contract was directly related to the receipt by defendant of payments for construction and not for bonus. The total sum of $100,000 was paid to plaintiff well in advance of both the final payment for construction (March 10, 1954) and the payment of $100,000 on bonus (June 1, 1955). The parties have placed their own construction on the words in the supplemental agreement by their actions in carrying out their primary contract. We shall let it stand.

The trial court aptly noted in its conclusions of law that even if "final pay-ment for construction" could be interpreted to include bonus payments as claimed by defendant, this would not preclude recovery by plaintiff. The supplemental agreement merely provides that the contract sum shall not be *payable until* defendant has received final payment for construction. It is reasonable to believe that the parties did not intend to make such receipt of final payment by defendant a condition precedent to payment to plaintiff, but rather fixed it as a convenient time for payment. See, North American Graphite Corp. v. Allan, 87 U.S.App.D.C. 154, 184 F.2d 387, 390–91 (1950).

That this was the intention of the parties is borne out by the facts of this case. Defendant received final payment for construction and had earned a bonus for early completion. It received part payment of the bonus on June 1, 1955, almost fifteen months after the final construction. Since that time, defendant has failed to take any action to collect the balance of the bonus, other than to send periodic statements to the City. There is no finding why this failure occurred although defendant argued and offered to show the balance was uncollectible. We think the trial court properly held that neither defendant's failure to act nor the City's failure to pay after this long period of time can excuse defendant's refusal to pay plaintiff the sum earned under the supplemental agreement and thereby defeat plaintiff's claim.

We have considered the numerous cases cited by both parties in support of well known principles of contract law. It would serve no good purpose to analyze them here. Under the facts of this case plaintiff is clearly entitled to recover the amount fixed in the agreement in question.

█ The trial court properly allowed interest on the amount of $20,000 at the rate of five per cent per annum from April 10, 1954 to the date of judgment. We conclude that the amount of the recovery is "due on * * * [an] instrument of writing" within the purview of the Illinois Interest Act, Smith-Hurd Ill Ann.

Stat., ch. 74, § 2.[1] Lewis Mach. Co. v. Aztec Lines, 7 Cir., 172 F.2d 746, 750 (1949); In re Morrison, 7 Cir., 261 F. 355, 356 (1919); E. J. & E. Ry. Co. v. N. W. Nat'l B'k of Chicago, 165 Ill.App. 35, 42 (1911). Cf. Continental Casualty Co. v. American Fidelity & Casualty Co., 7 Cir., 275 F.2d 381, 385–86 (1960).

The judgment of the district court is in all respects affirmed.

Affirmed.

---

1. "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment."