SHERWOOD TRUCKING, INC., etc., et al.

v.

CAROLINA CASUALTY INSURANCE COMPANY.

Civ. A. No. 75–0131–R.

United States District Court, E. D. Virginia, Richmond Division.

Feb. 8, 1976.

Arch Wallace, III, Richmond, Va., for plaintiffs.

Howard W. Dobbins, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

This matter is now before the Court to be decided on opposing motions for summary judgment and accompanying briefs, pleadings, stipulations of facts and exhibits herein.

Plaintiff, Sherwood Trucking, Inc. (Sherwood) is an Indiana corporation, with its principal place of business in the State of Indiana. The use plaintiff, Reserve Insurance Company (Reserve), is an Illinois corporation with its principal place of business in the State of Illinois. Defendant Carolina Casualty Insurance Company (Carolina) is a Florida corporation having its principal place of business in the State of Florida.

Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, this being a matter in controversy between citizens of different states which exceeds the sum of $10,000 exclusive of interests and costs.

On 21 April 1967 defendant Carolina issued its Combination Automobile Policy AC12779, effective 21 April 1967 to 21 April 1968, to John Lawson, Jr. as a truckman containing coverage for his business use of certain listed vehicles as a "long Haul Truckman Limited." Exclusion (b) of this policy provides that there is no coverage for "liability assumed by the insured under any contract or agreement."

On 30 November 1967, plaintiff Sherwood entered into an operating contract in the State of Indiana with John Lawson, Jr., the insured of defendant Carolina herein. The operating contract was

in the form of a standard trip-lease agreement permitted by the I.C.C. regulations. It provided in part that the Contractor (Lawson) shall save and hold harmless the Carrier (Sherwood) from all liability from payments required of the Carrier with respect to himself, or any driver, driver-helper, or employee for the employee's liability.

Upon execution of the operating contract, Lawson picked up the freight to be transported from Indiana to Virginia and he and one of his drivers, Thomas Rogers Parker (Parker) began the trip contracted for.

On or about 1 December 1967, Parker was operating the Lawson rig, which was one of the vehicles listed in the Carolina policy, in a southerly direction on West Virginia Route 17. At the same time and place, Clarence Albert Dean (Dean) was operating a tractor-trailer unit owned by Chemical Leaman Tanks Lines, Inc., in a northerly direction. Thurston H. Larch (Larch) was riding as a passenger in the Dean tractor. A collision occurred between the two rigs causing the death of Dean, serious personal injury to Larch, and substantial property damage to the tractor-trailer and contents of Chemical Leaman.

Claims were made and legal actions were taken by Dean's estate, Larch, and Chemical Leaman against Sherwood, Larson, and Parker. Parker was operating the Lawson rig under Sherwood's I.C.C. operating authority. Pursuant to I.C.C. regulations the leased rig displayed a placard furnished by Sherwood on its side at all times during the period of the lease. Reserve was the public liability insurer for Sherwood and provided a defense for Sherwood. It also defended Lawson and Parker when Carolina would not.

In October 1968, just before trial, the death claim for Dean's estate was settled for $25,000.00. In September 1972, again just before trial, the personal injury claim of Larch was settled for $70,000.00. In April 1973 the property damage claim of Chemical Leaman was settled for $8,500.00 again under similar circumstances to the first two. Reserve paid all three settlements totalling $103,500.00.

Reserve thereupon made demand on Lawson for reimbursement for the monies paid out for settlement of the injuries and damages allegedly the responsibility of Lawson, to no avail.

Reserve, as the use plaintiff, next brought, in May 1974, a civil action in the United States District Court for the Western District of Virginia, Danville Division, against Lawson. That action sought recovery of the $103,500.00 paid by Reserve.

On 4 June 1974 Carolina denied coverage to its insured, Lawson, for the loss alleged and refused to provide a defense to the then pending litigation in the federal court in Danville. Confessed judgment was entered for Sherwood, for the use plaintiff Reserve, against Lawson in the amount of $103,500.00 with interest thereon from 1 April 1973.

The present action follows. Sherwood, for the use and benefit of Reserve, seeks judgment against Carolina in the above amount on the ground that the collision was covered by the insurance contract between Lawson and Carolina and thus Carolina is obligated to make good the judgment against Lawson.

Defendant Carolina's liability policy provides tort coverage, that is, coverage for any sums defendant's insured, Lawson, may be required to pay as a result of the operation of the listed vehicles. The sum here sought is a sum of money defendant's insured is obligated to pay Sherwood as a result of or pursuant to the contract of indemnity set forth in his truck lease with Sherwood. Carolina's policy with Lawson, however, specifically excludes any coverage for "liability assumed by the insured under any contract or agreement." (Exclusion (b)).

Plaintiff in its brief at page 11 says:

. . . plaintiff does not contend that Carolina Casualty is obligated to [plaintiff] as a primary insurer, but contends rather that Carolina is liable to [plaintiff] through Lawson's obliga-

tion to indemnify Sherwood under the trip lease agreement.

Since this is plaintiff's clearly stated position it is necessary, for plaintiff to prevail, to show that Exclusion (b) is no bar to recovery.

■ The recent Supreme Court decision in *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems*, 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169, 44 U.S.L.W. 4001 (1975) has set to nought earlier differences among the Circuits. There is no public policy or I.C.C. regulatory prohibition against the indemnity agreement under which plaintiff seeks to recover. But *Transamerica* did not rewrite the insurance contract between Lawson and Carolina. If there were no coverage under the insurance contract for this particular loss there is still no coverage despite *Transamerica*.

Plaintiff cites *Continental Casualty Co. v. American Fidelity and Casualty Co.*, 275 F.2d 381 (7th Cir. 1960) as authority for the proposition that where an insurer would have been liable without the indemnity contract, the existence of the indemnity clause in conjunction with Exclusion (b) type language, will not preclude coverage.

A short answer to this contention is that plaintiff is specifically seeking coverage *through* the indemnity clause. It is not seeking coverage regardless of the indemnity clause.

The short answer, however, is not the full answer. An Annotation in 63 A.L. R.2d 1122 at 1123 explains the operative effect of a "contractual exclusion clause" as follows:

> From a perusal of all the cases in point the general principle may be deduced that a provision in a liability policy specifically excluding from coverage liability assumed by the insured under a contract not defined in the policy is operative—in the sense that it relieves the insurer of liability otherwise existing under the policy—only in situations where the insured would not be liable to a third party except for the fact that he assumed liability under an express agreement with such party, but does not relieve the insurer from liability under the policy where the liability of the insured assumed by the insured under an express contract with the third party is coextensive with the insured's liability imposed upon him by law. In other words, where the express contract actually adds nothing to the insured's liability, the contractual liability exclusion clause is not applicable, but where insured's liability would not exist except for the express contract, the contractual liability clause relieves the insurer of liability. The following cases support this general rule. . . . All the cases are based on the general principle that a contractual exclusion clause contained in an insurance liability policy is not operative in a situation where the insured would have been liable regardless of his contractual promises as an actively negligent wrongdoer to one merely passively negligent, or to one not at all negligent, but by statute or otherwise held vicariously liable. *Id.* at § 2(b).

This explanation of the law coupled with the distinction made by the A.L.R. editors between *United States Fidelity and Guaranty Co. v. Virginia Engineering Co.*, 213 F.2d 109 (4th Cir. 1954) and *Union Paving Co. v. Thomas*, 186 F.2d 172 (3rd Cir. 1951) leads this Court to the inquiry of whether defendant's insured, Lawson, was actively negligent in causing the accident. If he were, then it appears, under the *Virginia Engineering* case, that his insurance company, defendant herein, is liable to plaintiff because of Lawson's negligence and not because of Lawson's indemnity contract with Sherwood. If, instead, Lawson was not actively negligent then his liability to Sherwood would arise only under the indemnity clause—a contractual liability specifically excluded in Lawson's insurance contract with defendant.

The complaints filed against Lawson by the parties actually injured in the motor vehicle accident (Exhibits B and C) identify Lawson only as "owner" of

the negligently driven vehicle which defendant insured. Both allege one Parker was driving the vehicle and both allege, in effect, that it was Parker's negligence alone which caused the collision. Exhibit B to the complaint identifies Parker as a servant of Sherwood while Exhibit C identifies him, correctly, (Stipulation 4) as a servant of Lawson.

As related hereinabove, Sherwood Trucking, also named as a defendant in the underlying complaint, settled the claims asserted. Settlement was effected by Sherwood's liability carrier, Reserve.

Reserve, as aforementioned, then brought action against Lawson. It's complaint, Exhibit H to the complaint herein, was based on the indemnity agreement though it alleged that the accident was caused "[t]hrough the negligence of Thomas Rogers Parker and/or [Lawson]." It was to this complaint that Lawson confessed judgment (Exhibit H).

It is clear from the above recitation that Lawson was not "actively negligent" in the sense that he was personally negligent, the personal negligence being that of Parker. It is also clear that Lawson's liability is based on the vicarious liability of a master for his servant's negligence. Thus, Lawson's liability does not appear to meet the test cited above; he was not "actively negligent," he was "vicariously negligent."

But the test is more clearly stated, we believe, by Chief Judge Parker in *Virginia Engineering Co., supra* at 115, wherein he explained that where the liability of an insured to the person injured in the accident was one "imposed by law . . . within the coverage of the policy" then coverage must be afforded because of that legal liability.

 Here, as in the *Virginia Engineering* case, the liability imposed on Lawson was the vicarious liability imposed on a master for the negligent acts of his servant. Lawson's liability to the injured persons existed independent of the indemnity contract.

To paraphrase *Virginia Engineering* at page 112:

[Lawson] was entering into a . . . [trip lease agreement] in which liabilities of this sort might be incurred as a result of negligence on the part of [his] agents and servants; and the purpose of the insurance policy was to protect against liability arising from such negligence.

Lawson, having paid the premium on the policy to protect himself from liability for negligent acts of himself and his servants, is entitled to the benefit and coverage under that policy. So also, through him, is plaintiff herein.

Had plaintiff proceeded in garnishment, as defendant suggests it should, the legal issue here decided would be the same. It would be wasteful of the Court's time and that of the parties to send the parties back to reframe the papers while the issue ultimately to be decided remains unchanged.

An appropriate order shall issue.